### UNITED STATES v. PYLE et al.

(District Court, S. D. California, S. D.    October 7, 1921.)

#### No. 2611.

Criminal law ⟨⟩80—Conviction of officer of national bank charged with embezzlement essential to conviction for aiding and abetting the offense.

Under Rev. St. § 5209 (Comp. St. § 9772), making it a criminal offense for an officer or agent of a national bank to embezzle its funds, etc., and for any person to aid or abet such officer or agent in the commission of such offense, no crime is committed unless the embezzlement charged is committed by such officer or agent of the bank, and where such officer is acquitted of such charge there can be no conviction of the one charged as an aider and abettor.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Criminal prosecution by the United States against Edward J. Pyle and W. J. Conner. On motions of defendant Conner to set aside the verdict as to him and in arrest of judgment. Granted.

By indictment the above-named defendants were accused of a violation of section 5209 of the United States Revised Statutes (Comp. St. § 9772). Eighteen separate counts were charged, the total misapplications involved amounting to about $75,000. The first count is fairly illustrative of the others. It charges that the defendant Pyle was an agent and officer, to wit, vice president, of the National Bank & Trust Company of Pasadena, then and there engaged in doing a banking business under the laws of the United States, and a member of the Federal Reserve Bank of San Francisco, etc.; that said Pyle, on or about the 3d day of August, 1920, by virtue of his said official relation with said bank, had the power of management, control, and direction over its moneys, funds, and credits, and that on or about the date specified, "with the intent to injure and defraud said member bank and divers other persons," etc., he did "knowingly, willfully, and feloniously misapply certain of the moneys, funds, and credits of the said member bank to the amount and value of $6,000," in that the said Pyle, having such control over the moneys of the bank, did "loan and pay out of the moneys, funds, and credits of said member bank the sum of $6,000, upon a certain draft dated August 3, 1920, drawn by W. J. Conner upon one W. S. Ogletree; * * * that said draft was not then and there well secured, and in fact was not secured at all, and the drawer of said draft was then and there not financially able to pay the same, and in fact did not expect the said W. S. Ogletree to pay the same, all of which was then and there well known to the said Edward J. Pyle; that the proceeds of said draft, being the aforesaid sum of $6,000, were by the said Edward J. Pyle, as agent and vice president, then and there knowingly and willfully, and in fraud of said member bank, applied to the use, benefit, and advantage of the said W. J. Conner and of other persons to the grand jurors unknown, and not to any use, benefit, or advantage of said member bank, whereby the said sum of $6,000 then and there was wholly lost to the said member bank, and the moneys, funds, and credits of the same were and are depleted in that amount."

It was further presented by the grand jury that the said W. J. Conner "did knowingly, willfully, and unlawfully, and with intent then and there to injure and defraud said member bank and divers other persons, * * * aid, abet, incite, counsel, and procure the said Edward J. Pyle, vice president of said member bank as aforesaid, so as aforesaid to misapply the aforesaid sum of $6,000 of the moneys, funds and credits of the said member bank in the manner and form and with the intent as aforesaid."

Upon trial, the defendant Pyle was acquitted on each count, and the defendant Conner was by the jury found guilty on each count. Thereupon defendant Conner presented two motions, one to set aside the verdict finding him guilty, and the other in arrest of judgment, both based, inter alia, on the ground that, defendant Pyle having been charged with the willful misapplication of the moneys of the said bank, and the defendant Conner having been charged only with aiding and abetting defendant Pyle, and Pyle having by the jury been acquitted of any crime charged against him, therefore the verdict against the defendant Conner stands without support in law, etc.

Robt. O'Connor, U. S. Atty., and W. Fleet Palmer, Sp. Asst. U. S. Atty., both of Los Angeles, Cal.

Fredericks & Hanna, of Los Angeles, Cal., for defendant Pyle.

W. T. Helms and Fred H. Thompson, both of Los Angeles, Cal., for defendant Conner.

BLEDSOE, District Judge (after stating the facts as above). Defendants Pyle and Conner were prosecuted under section 5209 of the Revised Statutes for a misapplication of the funds of the National Bank

& Trust Company of Pasadena. Defendant Pyle was charged as an officer of the bank, and defendant Conner as an aider and abettor of Pyle. The statute, being intended primarily to protect national banking institutions against the peculations and malfeasances of their officers and employés (Coffin v. U. S., 162 U. S. 664, p. 669, 16 Sup. Ct. 943, 40 L. Ed. 1109), provides, first, that "every president, director, cashier, teller, clerk or agent" of the bank, who "embezzles, abstracts or willfully misapplies any of the moneys, funds or credits" of the bank, "with intent * * * to injure or defraud the association [bank] or any other company," etc., "and every person who with like intent aids or abets any officer, clerk, or agent in any violation of this section shall be deemed guilty of a misdemeanor," etc.

There is no general statute, to which my attention has been directed, making it a federal offense to commit a larceny or pilfering of the assets of a national bank. Neither is there any general statute giving to federal courts the jurisdiction to punish the obtaining of the property of a national bank through fraudulent representations. Such matters are left to the concern and disposition of the various state governments, which in the exercise of their respective sovereignties enact and enforce general laws intended to preserve the peace, good order, and rights of property of society in general. I am persuaded, therefore, that the aim and intent of this statute, in creating a federal offense, was to make it an offense cognizable by the federal courts only in the event that the abstraction or misapplication of the funds of a national bank should be committed by an officer or attaché thereof.

In that event, therefore, there is no crime committed under this statute, unless the act charged be committed by one of the specific persons named in the statute, that is, by one of the officers or attachés of the bank; and in order further to protect the bank, but purely as incidental to the main purpose and intention of the statute, if such officer of the bank be aided and abetted by another, one on the outside, or even by another bank official, that other, under the statute, will also be subject to punishment as for such aiding and abetting. In this wise, irrespective of the things actually done or the results actually brought about, if there has been no crime committed by the officer of the bank, there is no crime known to the federal law committed by one not connected with the bank. In other words, there can be no incident without the principal; there can be no aiding and abetting with respect to the misapplication of the funds of a national bank, of which this court under this statute has jurisdiction, if there has been no misapplication by an officer of the bank.

In this case the charge was that Conner aided and abetted Pyle, an officer of the bank, in misapplying its funds. The jury have acquitted Pyle, which is a legal demonstration of his innocence of the crime charged. It is a conclusive determination that there was no misapplication by him of the funds of the bank with intent to defraud. That being so, there was no crime under this statute which Conner could or did aid and abet; and in that wise the determination of the innocence of Pyle determines the nonexistence of any crime subject to the jurisdiction of this court committed by Conner.

These conclusions, if sound, require the court to grant the motions in arrest of judgment, and asking that the verdict convicting Conner be set aside upon the grounds and for the reasons adverted to hereinabove. That it is the correct view of the situation, I am persuaded, not only from the language and obvious purpose of the statute itself, but also from adjudicated cases which have construed the statute in one way or another.

Principal among these is the case of Coffin v. United States, 162 U. S. 664 et seq., 16 Sup. Ct. 943, 40 L. Ed. 1109. In that case, a man named Haughey, as president of a national bank, was indicted with others not connected with the bank (Coffin v. U. S., 156 U. S. 432, 433, 15 Sup. Ct. 394, 39 L. Ed. 481) for a misapplication of the bank's funds. Coffin, not connected with the bank, was indicted as an aider and abettor, the same as Conner herein. He only, apparently, was convicted. The disposition of the case as to Haughey does not appear. All through the long discussion of the case, extending over more than 20 pages, the Supreme Court considers the propriety of the instructions given and refused with respect to the necessity of a criminal intent and purpose on the part of Haughey, the president, in order that the defendant Coffin, the aider and abettor, might be lawfully convicted. If, as is urged herein, the aider and abettor may be convicted, even though the bank official be acquitted, the Supreme Court could easily have saved itself much trouble and long discussion by merely announcing that fact, and in that wise refraining from entering into a discussion of the question of the criminal intent and purpose on the part of Haughey. If it mattered not whether Haughey were innocent or guilty, then it mattered not whether he had a criminal intent. The only criminality necessary to have been shown would have been the criminality of the aider and abettor, Coffin. That is substantially the contention of the government herein, that the only criminality necessary to be shown in order to justify the conviction of Conner is the criminality of Conner, conclusively determined against him by the adverse verdict of the jury.

The Supreme Court's discussion of the case, however, shows that it considered at all times that Haughey's guilty purpose and intent must have accompanied the guilty purpose and intent of Coffin, in order that the act of the latter might, under the statute, have been rendered unlawful. For instance (162 U. S. on page 667, 16 Sup. Ct. 945, 40 L. Ed. 1109), in denying the necessity for the existence of a "common" purpose on the part of the president and the abettor, the court nevertheless states that it is required "that there should be misapplication of the moneys of the bank with a joint intent to 'injure or defraud,'" etc. "In accord with this view the court properly instructed the jury that there must have existed in the minds of both Haughey and the defendants the wrongful intent stated in the law." This announcement of the Supreme Court is utterly irreconcilable with the theory that Haughey could have been innocent—that is, devoid of wrongful intent —and yet his aider and abettor guilty. So on page 669 of the same decision (16 Sup. Ct. 946, 40 L. Ed. 1109) the court says:

"It is evident that no matter how active the cooperation of third persons may have been in the wrongful act of a bank officer or agent, such third person is required to be charged as an aider and abettor in the offense and pros-

ecuted as such. The primary object of the statute was to protect the bank from the acts of its own servants. As between officers and agents of the bank and third persons cooperating to defraud the bank, the statute contemplates that a bank officer shall be treated as a principal offender. In every criminal offense there must, of course, be a principal, and it follows that, *without the concurring act of an officer or agent of a bank, third persons cannot commit a violation of the provisions of section 5209.*" (Italics mine.)

The language last quoted is demonstrative of the soundness of Conner's contention that, Pyle having been acquitted of all crime, there could be no aiding and abetting on his part. On page 670 of 162 U. S. (16 Sup. Ct. 943, 40 L. Ed. 1109) the court proceeds at some length to answer the contention that there was an apparent want of identity between the crime alleged to have been committed by Haughey, the president, and Coffin, the aider and abettor, and that such want of identity was fatal to the indictment. The court answers this by showing there was no such want of identity; but if it were true that the abettor could be guilty, even if the bank officer were innocent, there would have been no necessity at all to indulge in the effort to show the identity of the crime committed by each of them.

On page 672 of 162 U. S. (16 Sup. Ct. 943, 40 L. Ed. 1109) it is stated that repeatedly the jury were told that they could not find the defendants (the two aiders and abettors) guilty unless they were satisfied beyond a reasonable doubt that Haughey and the defendants had committed the specific criminal acts alleged in the counts of the indictment, with the intent therein charged. It is said (162 U. S. on page 675, 16 Sup. Ct. 948, 40 L. Ed. 1109), in considering the instructions just noted:

"The charge as a whole having correctly conveyed to the jury the rule by which they were to determine from all the evidence the question of intent, we think there was no error to the prejudice of the defendant," etc.

This is undoubtedly an affirmance by the Supreme Court of the correctness of the charge of the court below in the behalf indicated that the jury could not convict the abettor unless they found the principal, the bank official, had committed the criminal act charged against him.

On page 675 (16 Sup. Ct. 943, 40 L. Ed. 1109) reference was made to a refusal of the court to instruct as to the criminal intent on the part of Haughey; this contention was not answered by the ruling or suggestion that criminal intent on his part was immaterial, but it was answered by the ruling of the court to the effect that the precise instruction referred to was given in substance elsewhere. If Haughey could have been devoid of criminal intent (as under the verdict reached is conclusively established with reference to Pyle), and still the aider and abettor convicted, the court would promptly have said so. So, also, on page 681 (16 Sup. Ct. 943, 40 L. Ed. 1109), the guilt of Haughey as being necessary to sustain and support the guilt of the aider and abettor was emphatically stated by the trial court and approved apparently by the Supreme Court in its consideration of the case.

Again (162 U. S. on page 686, 16 Sup. Ct. 952, 40 L. Ed. 1109), in answer to the proposition that the same criminal intent charged against Haughey was not charged against the aider and abettor, the court said:

"The answer is self-evident. It was wholly immaterial that the principal offender should have had several intents, *provided the principal and the aider and abettor were both actuated by the criminal intent specified in the statute.*" (Italics mine.)

These various and lengthily discussed rulings of the Supreme Court, in consideration of a case which went to that court twice, seem to me to be absolutely inconsistent with the theory, entertained herein by the government and argued with great insistence, that there may be innocence on the part of the bank officer and yet guilt on the part of his asserted aider and abettor.

To the same effect is the ruling of the Circuit Court of Appeals in Keliher v. U. S., 193 Fed. 8, 114 C. C. A. 128. There, pursuant to the provisions of section 5209, there was a prosecution of Keliher, not connected with the bank, as an aider and abettor of one Coleman, a bookkeeper thereof. The Court of Appeals (193 Fed. 11, 114 C. C. A. 131) says that "Coleman had been convicted and sentenced; but, of course, in the present case, it was necessary to allege and prove sufficient facts to support anew that conviction." In other words, no crime could be stated against Keliher, except in the face of allegations stating a crime under the statute against Coleman, the bookkeeper. If it is necessary, in order to make a good and valid indictment, to state the commission of a crime by the bank official, it is necessary to prove the crime so stated. The verdict of the jury herein is conclusive to the effect that there was no proof of such crime.

In Dickinson v. U. S., 159 Fed. 801, 86 C. C. A. 625, it was held that knowledge of the unlawfulness of the misapplication charged, brought home to Dickinson, the aider and abettor, could not aid the United States in the prosecution, unless the knowledge of Foster, the cashier, the principal named in the indictment, was proven, and the jury was so charged. This holding is applicable herein, in that it requires guilt to be shown on the part of the official before guilt may be found on the part of the aider and abettor. In Hoss v. U. S., 232 Fed. 328, on page 332, 146 C. C. A. 376, it is said that the court instructed the jury in repeated form that they could not convict the two aiders and abettors unless they should find that Rochau, the cashier, drew the cashier's check with intent thereby to defraud the bank, and also find the two defendants aided and abetted him with like intent. On page 334 of 232 Fed. (146 C. C. A. 376), the contention was considered that an instructed verdict should have been granted because there was no proof that the cashier was actuated by a fraudulent intent. The court overrules this contention by showing that the evidence was sufficient to show such fraudulent intent. Here, as in the Coffin Case, a complete answer to the argument advanced, if the theory of the government in the instant case be correct, would have been that a fraudulent intent on the part of the banker was immaterial.

In U. S. v. Hillegass (D. C.) 176 Fed. 444, 449, it is held that a misapplication by the cashier, with criminal intent, was necessary to be established to the satisfaction of the jury, by evidence pertinent to that issue, without regard to its connection with the defendant, the aider and abettor.

All of these cases, where this statute has been construed and examined, are directly and emphatically to the point that the guilt of the aider and abettor depends upon the proven guilt of the bank official specially named. Here the guilt of Pyle was asserted in the indictment. The indictment therefore was good; but the assertion so made is conclusively disproved by the verdict of the jury finding him innocent. In legal contemplation, then, the court must now view the situation as though no crime was charged against Pyle at all, or as though it had been alleged that he was innocent of any criminality in the transaction urged against Conner. Indeed, the position of the government must be either that Conner could legally be proceeded against, as for a misapplication of the funds of the bank, without the assistance or co-operation of any officer of the bank, a thing in no way countenanced by the statute, or that he could be convicted because of his own acts, and without any proof at all of the acts or the intent of the official whom it was alleged he was aiding and abetting. Either horn of the dilemma is negatived completely by the cases referred to.

Reliance is placed by the government upon the holdings in State v. Dowell, 106 N. C. 722, 11 S. E. 525, 8 L. R. A. 297, 19 Am. St. Rep. 568, Gallot v. U. S., 87 Fed. 446, 31 C. C. A. 44, and Rooney v. U. S., 203 Fed. 928, 122 C. C. A. 230. In my judgment, however, they lend no support to the contention advanced. In both the Dowell Case and the Rooney Case it was possible under the law for the person charged as an aider and abettor himself to be a principal, to be liable under the statute for the crime actually charged against the principal. It was distinctly held in the Dowell Case that the husband might, through the instrumentality of another, commit an act of rape upon his wife, and that therefore he might, as a principal, be guilty of an assault with intent to commit rape. In addition, the proof was positive in the Dowell Case that the asserted principal in the case, the colored man, did have the actual intent to commit a rape upon the wife of the accused. In the present case, the jury, however, have conclusively determined that Pyle did not possess the criminal intent required under section 5209.

So, also, in the Rooney Case. Rooney was indicted on two counts both as principal and as aider and abettor. The verdict of the jury was "guilty as charged," and it does not appear whether there was any necessity to consider the guilt on the aiding and abetting charge as distinguished from the charge as principal. However that may be, Rooney himself could, as he did, violate the statute in question as a principal and also as an aider and abettor. Conner, however, not being an agent or officer of this bank, could not violate this particular statute in any way except as an aider and abettor. The whole theory, intent, purpose, and history of the statute, particularly in view of the essentially limited jurisdiction of the federal government in criminal prosecutions, all tend to show this.

The Gallot Case does no more than to hold that there need be no conviction of the principal, in order that there may be a conviction of the aider and abettor, and this, of course, must follow. It does not hold, however, that if the principal be acquitted there can be a conviction of

the aider and abettor, which is the case we have here. In the Gallot Case, the principal, the bookkeeper, was dead, and the insistent effort there was made to show that Gallot might not be tried at all, because of the death of the principal. A man may be guilty, even though dead; but a man may not be legally said to be guilty, if the jury, upon due trial, have acquitted him. In the Gallot Case, moreover, the court did say that "the only necessity of inquiring into the record of the doings of Louis Colomb [the bookkeeper] was to ascertain whether or not a crime had been committed" (by Colomb—otherwise, his doings would not have been inquired into at all), "not for the purpose of convicting the said Colomb, but for the purpose of enabling the jury to determine whether or not the defendant below [Gallot] had aided in the commission of the offense as charged in the indictments." This case itself, in my judgment, sustains the contention that a showing of the guilt of the principal was a prerequisite to the legal conviction of the aider and abettor.

It is manifest in this case that the defendant Conner, through gross fraud and deception, obtained the money and property of the National Bank & Trust Company of Pasadena. In this unlawful and criminal conduct, however, under the verdict of the jury herein, it is conclusively established as a matter of law that the defendant Pyle, the only officer or attaché of the bank named, did not participate. Such being the case, in my judgment, no crime was committed by the defendant Conner of which this court in this proceeding has jurisdiction, and he should be proceeded against in the state court under the statutes penalizing the obtaining of property through the making of false and fraudulent representations. If, as is clear, a verdict of guilty could not be rendered against him unless the jury were convinced of the guilt of Pyle, a verdict rendered in obvious disbelief in the guilt of Pyle should not be permitted to stand. It lacks legal support.

The motion to set aside the verdict, finding defendant Conner guilty, and the motion in arrest of judgment, filed by him, are both granted.