**UNITED STATES  v.  KLOCK et al.**
No. 7, Docket 22474.

United States Court of Appeals,
Second Circuit.

Argued Dec. 15, 1953.

Decided Jan. 25, 1954.

Anthony F. Caffrey, U. S. Atty., for the Northern Dist. of N. Y., Syracuse, N. Y. (Robert J. Leamy, Asst. U. S. Atty., Oneonta, N. Y., of counsel), for appellee.

William W. Barron, Washington, D. C., Paul R. Shanahan and Robert K. Murray, Syracuse, N. Y. (William J. Barron, New York City, of counsel), for appellants.

Before CLARK, FRANK and HINCKS, Circuit Judges.

FRANK, Circuit Judge.

1. *Sufficiency of the evidence.*

■ We have examined the record carefully and think there was ample evidence to support the verdict. Lack of knowledge or consent by the bank is not an element of the crime; Mulloney v. United States, 1 Cir., 79 F.2d 566, 581. Since the allegation in the indictment of such lack of knowledge and consent was therefore surplusage, there was no need for the government to prove those facts. Glover v. United States, 5 Cir., 125 F.2d 291.

2. *Alleged illegal composition of the grand jury and the petit jury.*

■ This objection was not made until after the verdict. We think this was too tardy, but, in any event, the objection lacked merit; see our opinion in United States v. Titus, 210 F.2d 210.

3. *Exclusion of evidence as to authorization by bank officials of the overdrafts.*

(A) *Under the substantive counts.*

■ Defendants sought to prove that the responsible officials of the bank had authorized the overdrafts by Potter and (as circumstantial evidence) similar overdrafts by the others. If there was authorization of the Potter overdrafts, then they were but loans, and Klock's conduct with respect to them did not violate the statutory provisions named in the substantive counts, 12 U.S.C.A. § 592 and 18 U.S.C. § 656. This defense, if proved, would have exculpated not only Klock but Potter as well; for the latter, charged in those counts with aiding and abetting, could not be guilty unless Klock was. For that reason, it is immaterial whether or not Potter knew of the authorization.

■ The judge, however, apparently assumed that authorization of Klock's conduct, if proved, would be no defense to either defendant, because it would be merely approval of crimes committed by Klock. Acting, apparently, on that assumption, the judge seriously erred in excluding the following items:

(1) *Directors' reports, call reports for the Federal Reserve System and the State Banking Department:*

One of the defendant's excluded exhibits, a call report to the Federal Re-

serve System made June 30, 1950, indicated that the bank reported, as of June 30, 1950, approximately $10,000 in overdrafts which were debited to customers' accounts. Potter alone had drawn checks amounting to $17,000 against insufficient funds which were paid and "held out" (*i.e.*, not debited against his account) between March 10 and June 27, 1950. Titus, another of the bank's customers, drew checks amounting to $60,000 against insufficient funds during the same period; his overdrafts were not debited against his account. Klock, in order to enable the bank's books to balance, set up, before these transactions, a so-called "dummy control" for overdrafts not debited against accounts found in "Ledger 65" (a ledger containing approximately 200 of the bank's largest and most active-commercial accounts). The "dummy control" was in the same control book as the genuine control for "Ledger 65," and was presumably accessible to the bank officials. While the "dummy control" would enable the books to balance if the undebited overdrafts were posted in it, yet none of Potter's or Titus' overdrafts, for the period March 10 to August 30, 1950 were entered therein. Not having been entered in either the dummy control or as debits in Ledger 65, the undebited overdrafts for that period amounting to approximately $60,000 were not accounted for, and presumably the bank's general ledger could not have been balanced unless they were in some manner accounted for. There was therefore a large discrepancy between the amount of debited overdrafts reported to the Federal Reserve System and the amount of overdrawn checks actually paid by the bank.

If these exhibits had been received in evidence, the jury could have then reasonably inferred that not only did the bank's officers know about the $60,000 of undebited overdrafts which the bank did not report as overdrafts to the State Banking Department and the Federal Reserve, but also that the bank's officers considered those overdrafts informally made loans. The jury could further reasonably have inferred that the bank officers, thus considering the overdrafts as loans, had authorized Klock to omit posting them as debits against depositors' accounts. In effect, the defense to the substantive counts of misapplication of funds was that the bank officials treated the overdrafts as loans. While perhaps making of loans in this manner may be in violation of some state law,[1a] nevertheless it does not constitute a crime under 12 U.S.C.A. § 592 or 18 U.S.C. § 656, if Klock had no notice of the impropriety. Defendants were therefore entitled to introduce evidence tending to show that they were acting in accord with the bank's practice of making loans informally, and that the bank had acquiesced in Klock's bookkeeping in respect to these loans.

The same reasoning applies to defendants' excluded exhibits of directors' reports and reports to the State Banking Department.

(2) *The Clark Trucking Company financial statements:*

Defendants offered, and the judge excluded, the financial statements of the Clark Company, audited by a bank officer and in the bank's possession, to prove that the bank had allowed that company to overdraw its account repeatedly, had paid the company's overdrawn checks to the payees of the checks, and had given the company as much as one month in which to make good these overdrafts. This evidence would have been relevant to show that the bank had knowledge of overdrafts by its depositors and that the bank had allowed such overdrafts not only in isolated instances but frequently over a

---

**1a.** We do not know whether this would constitute a violation of state law. The point was not argued on this appeal, and we will not here pass on that question.

long period of time. We think the defendants had a right to produce this evidence to show the existence of a bank policy of allowing overdrafts and, further, had the right to cross-examine bank officials as to whether they reported to federal and state officials the Clark Company's overdrafts as overdrafts.

(3) *Testimony of Bank Officer Aquilino:*

Defendants sought to introduce testimony of a branch manager of the bank to the effect that he had, for years, known of a practice of treating overdrafts as loans. The judge excluded this testimony, reasoning that it was irrelevant since Potter had no knowledge of the bank's practice in this regard.[1b] We do not agree; such testimony would have been relevant to show the bank's policy.

(4) *The excluded testimony of Barbara Aitken:*

█ The stricken testimony of Barbara Aitken, a former bank bookkeeper, would have been relevant on the same ground. She stated that, in her capacity as bookkeeper, from 1942 to 1949, she placed checks of the Clark Trucking Company, drawn on insufficient funds, among the "holdouts" (*i.e.*, did not debit them), and that she did likewise as to overdrafts by bank officers and employees and their families. The fact that her testimony covered a period prior to the indictment period did not make it irrelevant. Cf. Heike v. United States, 227 U.S. 131, 145, 33 S.Ct. 226, 57 L.Ed. 450.

Of course, if it is proved at the retrial that Klock was on notice that his superiors' authorization of overdrafts was beyond their authority—because of some federal or state statute or regulation prohibiting the making of loans by the method of allowance of overdrafts—then Klock's defense of authorization would not be valid.

(B) *Under the conspiracy count.*

█ As to so much of the conspiracy count as charged a conspiracy to violate 18 U.S.C. § 1005, authorization by Klock's superiors could not be a defense; see our opinion in the companion case of United States v. Klock. But the conspiracy count also charged violation of 12 U.S.C.A. § 592 and 18 U.S.C. § 656, as to which (for reasons above noted) such a defense would be good. Since the jury, in finding defendants guilty under the conspiracy count, did not separately report their finding concerning guilt or innocence under 18 U.S.C. § 1005, we cannot know whether their verdict did or did not rest solely on a finding that defendants had violated those other sections. In other words, for all we know, the jury found the defendants innocent of a conspiracy to make false entries to deceive the bank examiners. We hold, therefore, that the errors in excluding evidence as to authorization must lead to a reversal and a new trial on all counts.

4. *The charge to the jury concerning the defense of authorization.*

█ The trial judge's erroneous assumption, on which apparently he based the exclusion of evidence relating to authorization, seems to have carried over into his charge on that subject. The judge stated that the testimony, introduced by defendants, "purporting to show authorization was mainly vague and inferential." He went on immediately to charge that "authority to commit a crime is an impossibility." He also gave an instruction, requested by the government, to the effect that authorization would not alter the criminal nature of the acts committed by Klock and Potter if they intended to injure the bank. These instructions may well have created the mistaken impression that au-

---

**1b.** If United States v. Wicoff, 7 Cir., 187 F.2d 886, 889, supports this view, we do not agree with it.

thorization would not be a defense to an accusation of misappropriation of bank funds. In the light of these instructions, it was surely error to deny several of defendants' requested charges which would have made it clear to the jury that no crime was committed if the bank had a policy of permitting the payment of checks drawn against insufficient funds and the defendant Klock had acted pursuant to such a policy.[1c]

**1c.** Defendants' requested instruction No. 22: "If you believe that the defendant Klock in his job as bookkeeper at the Syracuse Trust Company acted in such a way as to allow depositors including the defendant Potter to draw checks when there were *insufficient funds in their accounts* and that his actions in this regard were reasonably guided by the policy of the bank and the bookkeeper in his subordinate position acted under the compulsion of such authority, then you may find that he was not guilty of misapplying the funds of the bank as alleged in the indictment."

Requested instruction No. 23: "You must keep in mind that the defendant Klock was employed at The Syracuse Trust Company as a bookkeeper, which would not warrant the making of bank policy and if he permitted or caused checks to be paid against accounts where the funds were insufficient, his acts may be construed as intending to injure the bank. However, if the payment of checks by the bank against insufficient funds was a rule rather than an exception, and a policy was in force which was condoned by officers permitting the payment of *such checks against insufficient funds and* that the defendant Klock acted pursuant to such a policy and it is further shown that the defendant Klock had no stake in such activity, then there would be no misapplication of funds as provided by the statute."

Requested instruction No. 24: "The indictment charges, among other things, that the defendant Klock as an employee of the Syracuse Trust Company, caused the funds to be misapplied without the knowledge and consent of the bank or its officials. If you find from a fair appraisal of the evidence that the defendant Klock acted with the knowledge and approval of the bank or any officer or person authorized to give such consent or approval, then you must find that neither

## 5. *Charge concerning "reasonable doubt."*

We set forth in a footnote [1d] that part of the judge's charge relative to "reasonable doubt." In United States v. Farina, 2 Cir., 184 F.2d 18, 19, 20, we dealt with a charge which said that "a reasonable doubt * * * is a doubt for which a juror who says that he has such a doubt about a defendant's guilt, can give a reason for entertaining." We

defendant had an unlawful intent to injure or defraud the bank."

**1d.** "A defendant is not called upon to establish his innocence. The burden of proving his guilt rests upon the prosecution throughout the trial. He is entitled to the benefit of a reasonable doubt upon the whole case, upon all the evidence or lack of evidence in the case, and if there is a reasonable doubt in your minds as to any material question necessary to conviction, it must be resolved in their favor.

"But a reasonable doubt, ladies and gentlemen, is not a mere whim, guess or surmise, nor can it be used as a subterfuge to which resort may be had in order to avoid doing a disagreeable thing. It is such a doubt as reasonable men and women like yourselves may entertain after a careful and honest review and consideration of all the evidence in the case. As it says, it must be grounded in reason. It must survive the test of reasoning or the mental process of a reasonable examination.

"This rule does not require that the guilt of the defendants, Klock and Potter should be established beyond all doubts, because as you realize that would be an *impossibility in many cases.* There is nothing human, probably, that we can say is beyond all doubt. The law only says that the defendants are entitled to the benefit of a reasonable doubt, not all doubt. A reasonable doubt is such a doubt that a man of reasonable intelligence can give some good reason for entertaining if he is called upon to give a reason. It cannot be imaginary or unsubstantiated.

"Now, if the evidence establishes the guilt, the proof of guilt to a reasonable and moral certainty, a certainty that convinces and directs your understanding and satisfies your judgment beyond a reasonable doubt, then it becomes your duty to render a verdict of guilty against either defendant or both defendants for the crimes charged."

stated, "Perhaps it was unwise to vary the customary formulae", but we held the charge not reversible error since no objection thereto had been made at the trial. Previously, in United States v. Woods, 2 Cir., 66 F.2d 262, 265, we said: "We do not approve such a definition" of reasonable doubt, but refuse to reverse. So here, while we do not hold that the charge amounted to error,[2] we think it would be well if, at the new trial, the judge adhered to the conventional formulation.

### 6. Miscellaneous.

■ Defendants maintain that the judge erred in denying them inspection, until the government had rested, of important bank files relevant to the authorization defense. Whether this was error we need not decide. For we are sure that now, well in advance of the new trial, they will be given access to such data. We think that the judge unduly restricted cross-examination of government witnesses, concerning such data; we trust such restrictions will be relaxed at the new trial.

■ We see no indication of bias against the defendants on the judge's part. We think the doctrine to which we adverted in United States v. Zeuli, 2 Cir., 137 F.2d 845, 846,[3] does not apply here: The charge of conspiracy is not identical with the crimes charged in the substantive counts; for Klock's crime of misappropriation could have been committed without cooperation from Potter; and the aiding and abetting charge against Potter does not duplicate the charge of conspiracy.[4]

Reversed and remanded for a new trial.

2. For reasons stated in his dissenting opinion in United States v. Farina, 2 Cir., 184 F.2d 18, 19, 21, as well as Gomila v. United States, 5 Cir., 146 F.2d 372, and Pettine v. Territory of New Mexico, 8 Cir., 201 F. 489, the writer would hold the charge reversible error but concurs here because of this Circuit's precedents.

3. There we said: "Lower Federal courts have several times decided that, if a crime necessarily involves the mutual coopera-tion of two persons, and if they have in fact committed the crime, they may not be convicted of a conspiracy to commit it. * * * Although the Supreme Court has never actually so decided, it has twice clearly approved the doctrine; and we accept it as settled law."

4. Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489; Nye & Nissen v. United States, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919.