## UNITED STATES v. TITUS.

### No. 30845.

United States District Court,
N. D., New York.

May 28, 1954.

Theodore F. Bowes, U. S. Atty., Northern Dist. of New York, Syracuse, for the United States.

William W. Barron, Washington, D. C., for defendant.

FOLEY, District Judge.

■ The defendant, Paul Titus, files an affidavit of personal bias and prejudice on my part against him and in favor of the United States of America. The affidavit is supported by a certificate of good faith made by his attorney, William W. Barron, of Washington, D. C. Such affidavit has the sanction of the federal law but to the great credit of the bar it is seldom used. Recently, a similar challenge was made in the Costello case against United States District Judge Gregory Noonan of the Southern District of New York. U. S. v. Costello, 2 Cir.,

198 F.2d 200. A similar affidavit was filed against Judge Medina previous to the trial of the communist cases. Foster v. Medina, 2 Cir., 170 F.2d 632.

■ It is an ugly challenge for a judge to meet because it involves his state of mind, and causes the plain inference that he would disregard his oath of office to preside fairly, impartially and justly. Ordinarily, it would disturb me, but because it follows the pattern over a three-year period of violent legal process and procedures by certain of the attorneys in these criminal cases, involving substantial misapplications at the Syracuse Trust Company, I am able to accept this new thrust with calm and patience.

I have no intention to deny specifically the crude allegations in the affidavit and thus afford them some dignity. I have no personal bias or prejudice now against Titus, nor have I had any in the past, nor will I have any in the future. He is merely another defendant charged with the violation of the federal criminal statutes by a grand jury, and his case must be tried and disposed of in accordance with our system of justice. The answer to the charge that I might be unfair is in the records of this district court and the District Court for the Southern District of New York covering the many civil and criminal trials over which I have presided. It is equally in the minds and hearts of the jurors, litigants, attorneys, defendants, acquitted or convicted, who were present and participated in such trials. I am content to rest upon such record and opinions without fear or qualification.

This is the second time I have had such affidavit filed against me. The first was filed against me in this same case, by a co-defendant of Titus, one Klock. It was obviously a combined effort of defense strategy and made mainly for the purpose of delay. I denied such application by a memorandum-decision dated April 26, 1952; a petition for mandamus to the Court of Appeals, Second Circuit, was dismissed May 7, 1952. Inasmuch as this application is similar in form and

180

made in the same vein, I stand again upon the legal authorities cited therein that impelled denial because it was insufficient in law and fact. Thereafter, Klock pleaded guilty to the seventeen counts of this indictment and I suspended the imposition of sentence upon him. Titus was tried twice in the City of Syracuse and I presided at both trials. The first ended in disagreement and there was no objection made to my presiding at the second trial. At the second trial he was convicted on sixteen substantive counts and acquitted on the conspiracy count. My sentence amounted to a six-year imprisonment and a fine of $10,000, when the maximum might have been a total of eighty years and $80,000 in fines.

I am aware that I should not write too much because the main design of this disturbing use of legal process is to gain publicity, and to shake the confidence of the public in the courts and judicial procedures. However, the time has come to call a halt and advise that this court will not be frightened into submission. It seems important to the public interest to discuss the background of the legal maneuvers in this case. The attacks have been persistent throughout against the Federal Bureau of Investigation, the office of the United States Attorney, and the Judge and officials of this district court.

The indictment in this case was returned far back in June, 1951, along with many other indictments arising out of the same alleged misappropriations. A motion in behalf of Titus was made to dismiss the indictment involving him by his attorney, Albert Averbach, of Seneca Falls, New York. At that time Mr. Barron appeared only as associate counsel for Mr. Averbach and carried vigorously that part of the argument that the new revision of the criminal law, Title 18, U.S.C., did not include persons who might aid or abet a bank employee in the misapplication. During my research upon the problem, to my complete surprise, I discovered for the first time that Mr. Barron, who appeared as associate counsel for the defense, acted as the chief reviser for the commission that advised the Congress in its revision of the law, and personally stated to Congress that no substantive changes were made that were not fully explained. The motion to dismiss was denied and I wrote a detailed opinion analyzing the varied positions of Mr. Barron as chief reviser and as associate counsel for the defense. U. S. v. Klock (Root and Titus), D.C., 100 F.Supp. 230. In the later appeals handled by Mr. Barron, this point was never raised or argued, and I am at a loss to know whether it lost its merit which had been so urgently pressed before me, or embarrassment took its toll.

Then, before the first Titus trial at Syracuse, his attorney of record, Mr. Averbach, filed challenges to the drawing and constitution of the grand and petit juries for the Northern District of New York. Part of the challenge was to selection of the jurors from within the boundaries of the particular county where the court sits, but the most serious attack was upon the clerk of the court and the commissioner of jurors in that they intentionally discriminated in their selection of such jurors because of race, color, creed or status or employment in the community. During the hearing, the statement was boldly made by Mr. Averbach that the clerk of the court and the commissioner of jurors contrived to "pack the Grand Jury" with bankers to protect the banks and indict the innocent. The sheer unreliability of this statement was shown by the fact that the grand jury which returned all the indictments was sworn and sitting a long period of time before the misapplications were discovered in the bank, and before the agents of the FBI entered upon the investigation. This was the best measure of what was to come later. I denied the challenges upon the ground that they were baseless, reckless and irresponsible. Applications were again made to the Court of Appeals, Second Circuit, and again dismissed. The same points were denied upon the merits in the full appeals.

After the roar of that legal battle died down, when trial was again imminent, Mr. Averbach withdrew as attorney for Titus, with some statement to the general effect, as I remember, that he was out of the case completely, absolutely, and forever. A turbulent period then ensued in which Mr. Titus was granted time to obtain other counsel, which I advised him he should obtain, although he stated many times he was willing to try the case himself. Then, Mr. Barron, the previous associate counsel of Mr. Averbach, reappeared in the case as the sole trial attorney and defended Mr. Titus during his two trials.

Thereafter, Mr. Barron handled the Klock appeal, the Klock-Potter appeal, and the Titus appeal to the·Court of Appeals. The Klock conviction was affirmed, and the Klock-Potter and Titus cases were reversed upon the specific grounds of errors on my part in the exclusion of certain evidence. It is apparent that in those appeals, the charge was made again that I conducted the trials with bias and prejudice against the defendants and that as a result they did not receive fair trials. In the conclusion of the Klock appeal, U. S. v. Klock, 2 Cir., 210 F.2d 215, 216, the Circuit Court of Appeals stated: "Nor do we see any merit in defendant's contentions that he did not receive a fair trial because of the judge's bias or because of failure to grant defendant a continuance for a sufficient time to enable him to prepare his defense." In the Klock-Potter case, U. S. v. Klock, 2 Cir., 210 F.2d 217, 224, the court stated: "We see no indication of bias against the defendants on the judge's part." There was no statement on this issue in the Titus appeal, apparently because of the previous dismissal of the Klock affidavit of bias and prejudice, but the court clearly indicated I would preside again because the court in its wisdom suggested remarks I should omit in the presence of the jury when answering the polite statements of defense counsel. U. S. v. Titus, 2 Cir., 210 F.2d 210, footnote 4.

I write at length in order that the records of the court will contain a healthy discussion of the matters involved, and also with the sincere hope that the petty bickering and stageplay will end in this criminal prosecution, and it will return to a trial on the merits where it belongs.

In conclusion, I may say I had no intention to preside at this trial if the counsel came and advised me that he did not desire me to so preside. This unwarranted assault has not changed that intention, and if Chief Judge Brennan is available, I am sure he will shoulder the burden that should be mine. I take this position first, and most important, in the paramount interest of the defendant; and secondly, in the interests of justice to prevent further delay in the trial of this case. The indictment stands as strong today as it was in 1951, and in accordance with the instructions of the Court of Appeals, made January 25, 1954, it must be disposed of by a new trial.

The affidavit is stricken from the records of this court, and it is so ordered.