George **GIRAGOSIAN**, Defendant,
Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 6426.

United States Court of Appeals
First Circuit.

July 15, 1965.

Leo Patrick McGowan, Providence, R. I., for appellant.

William J. Gearon, Asst. U. S. Atty., with whom Raymond J. Pettine, U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, WATERMAN,* Circuit Judge, and GIGNOUX, District Judge.

GIGNOUX, District Judge.

This is an appeal from a judgment of the United States District Court for the District of Rhode Island. Defendant Giragosian was convicted by a jury on two counts of an indictment charging him with aiding and abetting the willful misapplication of funds of a federally insured bank by its branch manager, Herbert A. Page, in violation of 18 U.S.C. § 2 and § 656.[1] On this appeal Giragosian urges the inadmissibility of certain evidence, error in a portion of the judge's charge, and the insufficiency of the evidence to convict. He preserved the last ground by an appropriate motion for judgment of acquittal. Fed.R.Crim.P. 29. Because we find the evidence insufficient to support the verdict, there is no need to consider the other points raised by defendant on this appeal.

Defendant was convicted on Counts VIII and IX of the indictment. These counts charged, in substantially identical language, that on or about October 21, 1960, Giragosian aided and abetted Page, as branch manager of the bank, to "knowingly, wilfully, unlawfully and fraudulently," and "with intent to injure and defraud the said bank" misapply funds of the bank. As to the manner of the misapplication, Count VIII alleged that on or about October 21, 1960 Page caused to be paid out moneys of the bank in the amount of $1,477.50 upon a promissory note payable to the bank in the amount of $1500, executed by Jack Toumasian and endorsed by Mike Giragosian; that Page knew at the time that Jack Toumasian and Mike Giragosian were financially insecure and not entitled to credit in the bank; and that by reason of such payment $1,477.50 of the bank's moneys were converted, misapplied and lost to the bank. Count IX made similar allegations with respect to the payment by Page on the same date of $1,477.50 of the bank's moneys upon a second promissory note in the amount of $1500, executed by Arakel Kajoian and endorsed by defendant.

 Since Giragosian was not an officer, director, agent or employee of the bank, he could not be guilty as a principal under 18 U.S.C. § 656 for misapplication of the bank's funds, but only as an aider and abettor. Logsdon v. United States, 253 F.2d 12, 14 (6th Cir. 1958); United States v. Tornabene, 222 F.2d 875, 878 (3d Cir. 1955); United States v. Pyle, 279 F. 290 (S.D.Cal. 1921). In order to convict Giragosian of aiding and abetting it was necessary for the Government to prove that Page himself was guilty of the primary offense, that is, that he willfully misapplied the bank funds. Coffin v. United States, 162 U.S. 664, 16 S.Ct. 943, 40 L.Ed. 1109 (1896); United States v. Fromen, 265 F.2d 702, 705 (2d Cir.), cert. denied, 360 U.S. 909, 79

---

* Sitting by designation.

1. 18 U.S.C. § 656 provides in pertinent part as follows:

"Whoever, being an officer, director, agent or employee of * * * any * * * insured bank * * * willfully misapplies any of the moneys, funds or credits of such bank * * * shall be fined not more than $5,000 or imprisoned not more than five years, or both * * *."

18 U.S.C. § 2(a) provides:

"Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

S.Ct. 1295, 3 L.Ed.2d 1260 (1959); United States v. Tornabene, supra; United States v. Pyle, supra. While there can be no doubt that there was abundant evidence to support a finding that Girogosian was guilty of aiding and abetting the misapplication of bank funds if Page was guilty of the substantive offense, in our view the evidence was wholly insufficient to warrant the jury in concluding beyond a reasonable doubt[2] that Page was guilty of a willful misapplication of the bank's funds in violation of 18 U.S.C. § 656.

■ In judging whether the evidence was sufficient to support the jury's verdict, we must, of course, view the evidence in the light most favorable to the Government, and must give the Government the benefit of all inferences that reasonably may be drawn from the evidence. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Genstil v. United States, 326 F.2d 243, 245 (1st Cir.), cert. denied, 377 U.S. 916, 84 S.Ct. 1179, 12 L.Ed.2d 185 (1964); Seals v. United States, 221 F.2d 243, 249 (8th Cir. 1955). In that light the jury could properly have found, with respect to Page, the following facts. In his capacity as branch manager, Page paid out moneys of the bank upon two promissory notes, each for $1500. The first was executed by Jack Toumasian and endorsed by A. Manoog Giragosian, otherwise known as Mike Giragosian, the defendant's father. The second was executed by Arakel Kajoian and endorsed by defendant. Only defendant signed in Page's presence. Page made these two loans on the basis of the two endorsements and the loan applications submitted by Toumasian and Ka-

joian, both of whom had been introduced to Page by defendant in the course of these transactions. The loan applications disclosed that both applicants were locally employed, Toumasian at a weekly salary of $100 and Kajoian at a weekly salary of $125, and that Toumasian had other income of $1500 annually. Page knew defendant had no credit rating at the bank, but Page was acquainted with defendant and knew that he was associated with Club Baghdad, which had a checking account with the bank. In fact, the loans were defendant's, and the proceeds were deposited in the Club Baghdad account. Page did not investigate the credit of the makers or endorsers, although it was the bank's customary practice to do so. In fact, the two makers were not worth "three cents," although Page did not know it. There was no evidence as to the financial responsibility of the two endorsers.

■ We do not think the jury could properly conclude from this evidence that Page acted willfully, i. e., with the intent to injure or defraud the bank, which is a necessary element of a criminal misapplication of bank funds in violation of 18 U.S.C. § 656. Golden v. United States, 318 F.2d 357, 361 (1st Cir. 1963); Mulloney v. United States, 79 F.2d 566, 581–85 (1st Cir. 1935), cert. denied, 296 U.S. 658, 56 S.Ct. 383, 80 L.Ed. 468 (1936); Logsdon v. United States, supra at 15; Seals v. United States, supra, at 245–246 of 221 F.2d.[3] As a minimum, in order to be guilty of this crime, Page must have acted with such a reckless disregard of the bank's interests as to justify a finding of an intent to injure or defraud it. Mulloney v. United States, supra at 584,

2. Defendant contends that the test for determining the sufficiency of the evidence is whether every reasonable hypothesis inconsistent with guilt is excluded. We persist in our recent rejection of this test. Dirring v. United States, 328 F.2d 512, 515 (1st Cir.), cert. denied, 377 U.S. 1003, 84 S.Ct. 1939, 12 L.Ed.2d 1052 (1964).

3. In view of our conclusion that the evidence was insufficient to support a finding that Page acted willfully, we do not

reach the question of whether the Government sufficiently established that in fact any misapplication of the bank's funds occurred. This is, of course, a necessary predicate to a criminal misapplication of bank funds in violation of 18 U.S.C. § 656. United States v. Mulloney, 8 F.Supp. 674, 677 (D.C.Mass.1934), aff'd Mulloney v. United States, supra; Johnson v. United States, 95 F.2d 813 (4th Cir. 1938).

of 79 F.2d; Logsdon v. United States, supra. The requisite intent may, of course, be inferred from the facts and circumstances of the case. Golden v. United States, supra; Hall v. United States, 286 F.2d 676, 679 (5th Cir.), cert. denied, 366 U.S. 910, 81 S.Ct. 1087, 6 L.Ed.2d 236 (1961); Logsdon v. United States, supra; Seals v. United States, supra at 248, of 221 F.2d. But the facts and circumstances disclosed by the evidence in this case do not justify such an inference. Certainly there is no direct evidence of any intention on the part of Page to act otherwise than in the best interests of the bank. There are indications in the record that defendant may have been of questionable character, but there is no evidence that Page knew this. Nor is there any evidence that Page derived any profit from these transactions or stood to benefit in any way from the granting of these loans. In fact, the Government does not appear to have made any effort whatsoever to show any close relationship between Page and defendant or to provide any reason why Page should have subjected himself to criminal liability to enable defendant to obtain money. There is no evidence that Page knew that any of the four makers and endorsers were financially irresponsible. The only evidence indicating that Page was derelict in his duty to the bank was his failure to investigate their credit before approving the loans. In view of the facts that Page was previously acquainted with defendant who Page knew was associated with a business which had an account with the bank; that defendant's father and two of defendant's acquaintances were the other persons liable on the notes; and that the two makers furnished satisfactory loan applications, we cannot justify the inference that Page's dereliction of duty rose to a reckless disregard of the bank's interests. To be sure, Page may have acted irregularly or improperly, Johnson v. United States, supra at 816, or he may have acted incautiously, Williamson v. United States, 332 F.2d 123, 132 (5th Cir. 1964), or he may have used bad judgment in making the loans, United States v. Mulloney, supra; but such action does not rise to criminal dimensions. As the Supreme Court declared long ago in United States v. Britton, 108 U.S. 193, 199, 2 S.Ct. 526, 531, 27 L.Ed. 701 (1883),

"This might be an act of maladministration on the part of the defendant. It might show neglect of official duty, indifference to the interests of the association * * *; but to call it a criminal misapplication by him of the moneys and funds of the association, would be to stretch the words of this highly-penal statute beyond all reasonable limits".

The authorities relied on by the Government to support its position that the evidence is sufficient to sustain the verdict are clearly distinguishable. In Hall v. United States, supra, the evidence showed that the bank official knowingly made repeated and substantial loans on unpaid and unsecured drafts without charging interest and made false entries in the books of the bank to conceal the resulting shortages. The evidence in United States v. Fromen, supra, was that the bank officer carried as cash checks of the defendant long after they had been dishonored, repeatedly cashed further checks drawn by the defendant, and altered the bank records to conceal the transactions. In Logsdon v. United States, supra, the evidence disclosed that the bank officer had juggled accounts, concealed records, overstated cash on deposit with correspondent banks, and failed to charge against depositors' accounts checks which the bank had honored. Likewise in Mulloney v. United States, supra, the court found that the bank official had approved what he knew was an extremely hazardous loan, without sufficient security, to a financially irresponsible person for the benefit of a failing business, in which the official had a personal financial interest. In all of these cases, there was ample evidence of willful misapplication of bank funds by a bank officer acting in total disregard of the bank's interests.

For the reasons stated, we hold the evidence insufficient to support the

verdict. Because we think the defect in evidence may be supplied at another trial,[4] the mandate will permit a new trial. Bryan v. United States, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335 (1950).

Judgment will be entered vacating the judgment of the District Court, setting aside the verdict, and remanding the case to that court for further proceedings not inconsistent with this opinion.

4. The record before us, although not before the jury, reveals that Page, who was named as a co-defendant in the indictment, pleaded guilty before trial to the charges against him of criminal misapplication of bank funds in connection with these transactions.