**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Verda Lou STEVISON, Defendant-**
**Appellant.**

**No. 71–1809.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 19, 1972.

Decided Dec. 6, 1972.

Rehearing Denied Jan. 9, 1973.

Ralph T. Stenger, Belleville, Ill., for defendant-appellant.

Henry A. Schwarz, U. S. Atty., E. St. Louis, Ill., for plaintiff-appellee.

Before KILEY and CUMMINGS, Circuit Judges, and CAMPBELL,[1] Senior District Judge.

KILEY, Circuit Judge.

Verda Lou Stevison and her daughter, Marilyn S. Velasco, were indicted together in a two count indictment. In Count I Stevison was indicted for misapplying $100,617.51[2] in federally insured bank funds in violation of 18 U.S.C. § 656.[3] In that same count Velasco was indicted for aiding and abetting the violation (18 U.S.C. § 2 and § 656). In Count II they were both indicted for conspiracy to commit that offense in violation of 18 U.S.C. § 371. A jury found both guilty under Count I and not guilty under Count II. They have appealed separately. In this opinion we affirm the conviction of Mrs. Stevison.

Mrs. Stevison (appellant) was cashier of the Bank of Sesser, in Sesser, Illinois, for more than 25 years. In the period from May 12 to October 10, 1970, her daughter wrote 48 checks—ranging in amounts from $100 to $20,000—drawn on the Sesser Bank against her account. The account had insufficient funds to cover the checks. Her daughter drew three other checks against an account of the fictitious Indiana and Kentucky Health Care Development, an account maintained at another bank, payable to herself which the appellant cashed at the Sesser Bank when the account of the Health Care Development had insufficient funds to cover the checks. All of the checks drawn on the Sesser Bank ac-

count, amounting to $52,800, were paid by appellant from the Sesser Bank's cash items and deducted by her from undivided profits.

On October 8, 1970 the Bank's Board of Directors was informed of the misapplication. The Board thereafter delayed taking action on the promises of appellant that the misapplied funds would be restored. By November 17, 1970 the Bank's loss was over $100,000. On that date the Board requested her resignation. Appellant's indictment, trial and conviction followed.

## I.

Appellant contends there is insufficient evidence in the record to establish the essential element of specific intent to defraud the Bank. We find no merit in the contention. Although there is no direct evidence that she specifically intended to defraud the Bank, there is uncontroverted evidence that appellant received the worthless checks drawn by her daughter, authorized their payment, and carried them against the Bank's cash items. On May 27 she told the Bank's Executive Vice President, Gordon, who learned of the misapplication, that she would return the checks, but she failed to do so and instead paid them from undivided profits. She failed to return checks paid by other banks, which Gordon gave her to return to those banks. She persuaded the Bank Board to delay action by promising to restore the Bank's loss when she knew or should have known that she had no financial source from which the needed money could be obtained. We think that the jury could infer from this evidence that the essential element of intent or "reckless disregard" of the Bank's interest was proven. Girogosian v. United States, 349 F.2d 166, 168–169 (1st Cir. 1965).

Appellant argues that since she managed the Bank's day to day affairs with

---

1. Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

2. The parties stipulated that that amount was lost by the Bank.

3. Theft, embezzlement or misapplication by bank officer or employee.

no direction or interference by the directors, she had implicit authority to loan money. She contends that she loaned the Bank's money to her daughter and merely applied the loaned funds to pay her daughter's checks. She asserts that Gordon knew of the loans amounting to $45,000 in May, 1970, but did not make disclosure to the directors until the October 8 meeting of the Board. And she says that Gordon's knowledge of the loans and failure to act was an implicit approval of her loan commitments to her daughter.

■ The fact that Gordon knew of appellant's misapplication and withheld this information from the Board for several months, or that the Board delayed action after it knew of the overdrafts, did not compel the jury to find that the misapplications were authorized or approved by the Board so as to obviate the element of intent to defraud. The jury could reasonably find on the evidence that because of appellant's long service with the Bank it was probable that the Board delayed action upon her promise that she would obtain the money to repay the Bank's loss. The jury might infer that she knew or should have known from her experience that the "loans" would injure the Bank, yet in "reckless disregard" of that knowledge performed the fraudulent acts. The decision in United States v. Klock, 210 F.2d 217 (2nd Cir. 1954), cited by appellant, is easily distinguishable on the facts.

## II.

Appellant claims reversible error in the district court's denial of her motion under Rule 14 F.R.Cr.P.[4] to sever her trial from that of her daughter. She asserts that her daughter "coerced" her into covering the overdrafts by threatening to commit suicide. She claims that her defense was prejudiced during the joint trial because her daughter's defense was insanity. We do not think that appellant's "coercion" defense was prejudiced. The testimony concerning her daughter's eccentric conduct tended to aid appellant's coercion defense rather than to oppose it. It follows that we cannot agree that instruction 43, that to find the daughter guilty as an aider and abettor her mother must be found guilty as a principal, "compounded the error" in denying the severance.

■ We hold the court did not abuse its discretion or commit reversible error in denying the severance motion, since the court was not presented with "most cogent reasons" for granting the motion. United States v. Kahn, 381 F.2d 824, 838 (7th Cir. 1967).

## III.

Having found no reason to reverse the conviction of appellant on the ground of insufficiency of evidence of intent and no reversible error in the ruling on the severance motion, we turn to the appellant's contentions challenging rulings during the trial.

Appellant contends that the court erroneously and unduly limited and curtailed development of the coercion defense. The coercion defense was intended to rebut evidence of intent on the part of appellant to defraud the Bank. Appellant hoped to show that in May, 1970 she was in a depressed state of mind because of the death in Vietnam in 1967 of a young soldier related to her. She argues that in this depressed state her daughter's suicide threat compelled her to cover the overdrafts.

4. Rule 14. Relief from Prejudicial Joinder

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.

■ In the first place, the doctrine of coercion is an affirmative defense and it is plain that the death of appellant's relative in 1967 was not an "immediate" limitation of her free choice of conduct in 1970 which would justify invoking the coercion doctrine under the rule established in Shannon v. United States, 76 F.2d 490, 493 (10th Cir. 1935). See R. I. Rec. Center Inc. v. Aetna Cas. Co., 177 F.2d 603 (1st Cir. 1949).[5] Furthermore, if appellant thought that her daughter was serious about suicide in May, 1970, she has not shown that she did not have a "full opportunity to avoid" that threat of suicide by taking steps to have her daughter restrained. Finally, the record shows that during her cross-examination the jury heard appellant testify about the threat and how it affected her conduct. We find no merit in the contention that development of the defense of coercion was unduly limited.

Appellant also contends that the government has not sufficiently proven that prior to her daughter's suicide threat appellant did not in good faith rely upon the appearance of financial stability created by her daughter, and that in the period after the threat she acted to avoid her daughter's suicide; and that in neither period was there proof of the "specific intent" to defraud the Bank. We have already held that the evidence was sufficient to warrant inferences that appellant acted in "reckless disregard" of the Bank's interest.

■ The district court did not err, as appellant claims, in permitting witness Conway's testimony that on May 21, 1970 he called appellant concerning the worth of a $20,000 check drawn by her daughter on the Sesser Bank and presented to a Cannelton, Indiana bank for purchase of a cashier's check, and that she told him the check would be honored. The testimony was properly admitted as bearing on intent. United States v. Hampton, 457 F.2d 299, 302 (7th Cir. 1972).

In view of the sufficiency of evidence recited in the first part of this opinion, we think it is clear that the court did not err in refusing to give appellant's proposed instruction 3.[6] Appellant concedes there is no reported American case supporting the proffered instruction.

■ Appellant contends that a person charged as aider and abettor in a case like the one before us may, since 1951, be convicted even if the person charged as principal be found not guilty. The supporting argument is that instructions 32 and 43 which were given concerning principal and aider and abettor were erroneous, and that a proper instruction would have allowed the jury to acquit appellant of the charge of being a principal under Count I and yet convict her daughter as an aider and abettor. Appellant's theory is that the jury could find that the principal, appellant, committed acts in violation of § 656 but that her affirmative defense of "coercion" exculpated her. This affirmative defense, it is asserted, would not prevent the jury from finding her daughter guilty as an aider and abettor. The implication is that the jury convicted appellant as a principal merely for the purpose of convicting her daughter of violating § 2 and § 656. The presup-

---

5. In the light of these decisions we see no necessity of discussing the English rule in a decision cited in appellant's brief as: R. v. Steane, Vol. 1, C.C.A., All England Law Reports 813.

6. Stevison tendered instruction No. 3. Refused.

In the case of the United States v. Verda Lou Stevison, the defendant has raised the issue of duress or compulsion upon the defendant from her daughter from May 27, 1970 to the end of the period stated in the indictment. It is for the Government to prove beyond a reasonable doubt the criminal intent during that period. The jury is entitled to presume that intent if you find that acts of the defendant were done as the result of the free, uncontrolled action of the accused; you are not entitled to presume that intent if the evidence and circumstances show that the acts were done in subjection to the force or compulsion of Marilyn S. Velasco or were as equally consistent with an innocent intent as with a criminal intent, for example, a desire to avoid death or bodily harm to her daughter.

position that an aider and abettor may be convicted, since 1951, absent conviction of the principal is invalid. Girogosian v. United States, 349 F.2d 166 (1st Cir. 1965); United States v. Caplan, 123 F. Supp. 862 (W.D.Pa.1954). We find no merit in the contention.

Neither was the court's instruction 26—challenged here—erroneous. The instruction applied the doctrine of coercion as stated in Shannon v. United States, 76 F.2d 490 (10th Cir. 1935), to the appellant's theory on the facts. There was no objection at trial to that instruction, and we need discuss the challenge no further.

■ The court did not err either in refusing to give instructions numbered 1 and 2 proffered by appellant. No. 1 would have told the jury in substance that appellant had committed no offense if she in good faith acted on belief that her daughter would be able to repay the checks "when required." The district court could well have decided on this record that as a matter of law the evidence did not justify the instruction.

The decision in Swingle v. United States, 389 F.2d 220, 222 (10th Cir. 1968), does not support instruction No. 1. This record—unlike that in *Swingle,* where the jury acquitted Swingle in nine instances prior to the time he should have learned of Riegan's financial plight— would not compel finding "good faith" in transactions before May 27, the date on which appellant failed to return $45,000 in worthless checks through banking channels, or "coercion" in a period thereafter in which over $100,000 was misapplied.

Finally, there is no evidence to support the theory that appellant's conduct was guided by a Bank "policy" which authorized the conduct. The only reasonable view of the evidence is that the Board of Directors gave her an extended opportunity to fulfill a promise that she would restore the misapplied funds. The dis-

trict court did not err, therefore, in refusing to give instruction 2.

For the reasons given, the judgment is affirmed.

CUMMINGS, Circuit Judge (concurring).

The last paragraph of Instruction No. 43 told the jury in effect that in order to convict defendant's daughter, Marilyn S. Velasco, as an aider and abettor under 18 U.S.C. § 2, it must find the defendant Verda Lou Stevison guilty of violating 18 U.S.C. § 656.* Although there is authority enunciating the general proposition that proof that someone is guilty of the primary offense in 18 U.S.C. § 656 is necessary for the conviction of another as an "aider and abettor" under 18 U.S. C. § 2, I entertain some doubt as to whether the daughter must be acquitted of the 18 U.S.C. § 2 charge if the sole reason her mother were not guilty of violating 18 U.S.C. § 656 was, as contended, that the daughter coerced the mother into misapplying the Bank's funds. 18 U.S.C. § 2(b) states that "whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." If the defendant's coercion defense precludes her daughter's conviction under this statute, then 18 U.S.C. § 2(b) punishes one for causing an act to be done, etc., only so long as that causing does not rise to the level of coercion sufficient to exculpate the person coerced. Similarly, 18 U.S.C. § 2(a), which makes one punishable as a principal if he, *inter alia,* "commands, induces or procures" commission of an offense against the United States, would not reach commanding, inducing, or procuring that amounted to such kind of coercion. The Government has shown little in logic to recommend such a construction.

Despite these misgivings, I concur in the judgment because at no time during

---

* The last paragraph of Instruction No. 43 provides:

"However, if you find, Verda Lou Stevison [the mother], not guilty as charged in Count I of the indictment, then you must find the defendant, Marilyn S. Velasco [the daughter], not guilty as charged in Count I of the indictment."

the trial did defendant object to the giving of Instruction No. 43. Since an error in this matter would not constitute plain error which must be recognized in order to prevent a miscarriage of justice in this case, I think defendant is precluded from raising it now. Federal Rules of Criminal Procedure 30, 52(b).

