Roney and Fay, Circuit Judges, with James C. Hill and Hatchett, Circuit Judges, dissented in part.

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John R. ADAMSON, III,
Defendant-Appellant.**

No. 80–7284.

United States Court of Appeals,
Fifth Circuit.*
Unit B

March 10, 1983.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Martin C. Puetz, Asst. Federal Public Defender, Augusta, Ga., for Adamson.

William T. Moore, Jr., U.S. Atty., Melissa S. Mundell, Frederick W. Kramer, Asst. U.S. Attys., Savannah, Ga., for plaintiff-appellee.

Before GODBOLD, Chief Judge, RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, HATCHETT, ANDERSON, and CLARK, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

The appellant, John R. Adamson, III, and three others were indicted under 18 U.S.C.A. §§ 656,[1] 1005,[2] 1014,[3] and 2[4] (West 1976) in connection with several loans made by the First Augusta Bank and Trust Company. After a jury trial, appellant was convicted of one count of willful misapplication of bank funds in violation of § 656, one count of making a false entry in the books, reports and statements of the bank in violation of §§ 1005 and 2, and three counts of knowingly making false statements to the bank for the purpose of influencing loan applications in violation of §§ 1014 and 2. A panel of this court affirmed the convictions under §§ 656 and 1014, but reversed the conviction under § 1005. *United States v. Adamson*, 665 F.2d 649 (5th Cir.1982). Rehearing en banc was granted, and the panel opinion vacated. 665 F.2d 660. Upon rehearing, appellant did not argue that the panel erred when it held that the evidence was sufficient to support convictions on the three § 1014 counts for knowingly making false statements to the bank for the purpose of influencing its action on loan applications; accordingly, Part IV of the panel opinion, sustaining the § 1014 convictions, is reinstated. Similarly, appellant did not

1. 18 U.S.C.A. § 656 provides in pertinent part:
 Whoever, being an officer, director, agent or employee of ... any Federal Reserve Bank, member bank, national bank or insured bank, ... willfully misapplies any of the moneys, funds or credits of such bank ..., shall be fined not more than $5,000 or imprisoned not more than five years, or both....

2. 18 U.S.C.A. § 1005 provides in pertinent part:
 Whoever makes any false entry in any book, report, or statement of such bank with intent to injure or defraud such bank, or any other company, body politic or corporate, or any individual person, or to deceive any officer of such bank, or the Comptroller of the Currency, or the Federal Deposit Insurance Corporation, or any agent or examiner appointed to examine the affairs of such bank, or the Board of Governors of the Federal Reserve System—
 Shall be fined not more than $5,000 or imprisoned not more than five years, or both.

3. 18 U.S.C.A. § 1014 provides in pertinent part:
 Whoever knowingly makes any false statement or report, ... for the purpose of influencing in any way the action of ... any bank the deposits of which are insured by the Federal Deposit Insurance Corporation ... upon any application, advance, discount, ... commitment, or loan, or any change or extension of any of the same, ... shall be fined not more than $5,000 or imprisoned not more than two years, or both.

4. 18 U.S.C.A. § 2 provides in pertinent part:
 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
 (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

argue that the panel erred when it rejected appellant's argument that the district court improperly admitted a certain cease and desist order into evidence; accordingly, Part V of the panel opinion also is reinstated.

The only issues presented to the en banc court relate to the propriety of the jury instructions under §§ 656 and 1005. We conclude that the jury instructions improperly lowered the mens rea standard under § 656 to mere "recklessness." Consequently, we reverse appellant's conviction on the willful misapplication count under § 656. However, we conclude that the error did not taint the jury charge with respect to § 1005, and therefore we affirm appellant's conviction on that false entry count.

## I. FACTS AND POSTURE OF THE ISSUES

This case arises out of a series of events which contributed to the failure of the First Augusta State Bank of Augusta, Georgia. The bank was insured by the Federal Deposit Insurance Corporation. During the times covered by the indictment, appellant Adamson was the president and a director of the bank. He also served as a lending officer and was a member of the bank's Loan and Investment Committee. Two of Adamson's co-defendants, Glenn Bertrand Hester and R. Eugene Holley, also were convicted on both the § 656 count and the § 1005 count. Hester was a major stockholder of the bank, a member of the bank's executive committee, and the attorney for the bank. Holley, a close friend, business associate and law partner of Hester, was also a major borrower from the bank. Hester and Holley also appealed, but both appeals subsequently were dismissed upon motions for voluntary dismissal.

The two counts presented to the en banc court involve a substantial loan which appellant Adamson authorized and which ostensibly was made to Island Summit, Inc., a corporation either wholly owned by or under the control of Hester. The actual beneficiaries of the loan were co-defendants Hester and Holley, who signed the note as guarantors. The evidence permitted a finding by the jury that the corporation was inactive and financially unable to repay the loan. Further, the defendants admitted that no one expected the corporation to repay the loan; rather, the loan was made on the strength of the net worth of the actual beneficiaries of the loan, Hester and Holley. At trial, the government's theory of the case was that appellant Adamson authorized a sham loan to a nominal corporate borrower in order to conceal an illegal and potentially unsafe concentration of bank loans to a single debtor. The evidence justified a finding that the loan would have violated the bank's legal aggregate lending and unsecured loan limits if it had been made directly to Holley. The evidence also permitted a finding that the loan was structured in a way which made detection difficult and which tended to deceive the bank and the bank examiners about the true state of affairs. The jury found appellant guilty of willful misapplication of bank funds (§ 656) and a false entry in the bank's records (§ 1005) in connection with this loan.

With respect to § 656, appellant contends that the jury instructions erroneously defined the requisite mental state that the accused must have in order to commit willful misapplication of bank funds. In particular, the appellant objects to the charge that:

A reckless disregard of the interest of the bank is the equivalent of the intent to injure or defraud the bank.

. . . .

I charge you that the element of criminal intent necessary for conviction for a willful misapplication of bank funds is not fulfilled by a mere showing of indiscretion or foolhardiness on the part of the bank officer. His conduct must amount to reckless disregard of the bank's interests . . .

. . . .

The word "willful" is also employed to characterize a thing done without ground for believing it is lawful, or conduct marked by a reckless disregard, whether or not one has the right to so act.

Record on Appeal, Vol. VIII, at 21, 23–24. If the proper mens rea for § 656 is knowledge, and if the jury instructions as a whole either equate recklessness with knowledge or substitute recklessness for knowledge, then *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), compels the conclusion that the charge is erroneous. Neither the government nor the dissenting judges dispute this. *Sandstrom* found error in a charge under which the requisite mens rea was merely presumed. Here there was more than a presumption; the charge actually equated the lesser recklessness mens rea with the higher mens rea of knowledge.

To resolve the issues raised by appellant, we first must determine the appropriate mens rea for a § 656 conviction (Part II). Then we must decide whether the jury instructions as a whole erroneously permitted the jury to apply a lower recklessness mens rea standard to the § 656 count (Part III). Finally, although the jury instructions regarding the § 1005 count did not include a reference to the recklessness mens rea, we must address appellant's argument that the jury instructions on § 656, which immediately preceded those on § 1005, carried over and tainted the § 1005 charge (Part IV).

## II. MENS REA FOR § 656

### A. *Background*

As explained in the panel opinion, 665 F.2d 649, 654–56, a previous Fifth Circuit case, *United States v. Welliver,* 601 F.2d 203 (5th Cir.1979), held that a defendant's reckless disregard for the interests of the bank was sufficient to satisfy the intent requirement of § 656. If the rule as stated in *Welliver* is correct, then the instant charge which permitted a finding of guilt based on a mens rea of recklessness would not be erroneous. We brought this case en banc to reconsider *Welliver* 's § 656 holding because it is inconsistent with the Supreme Court's interpretation of the predecessor statute, because it is inconsistent with the position taken by the other circuit courts of appeal, because other Fifth Circuit cases cast some doubt on the rule, and because of the inconsistent mens rea requirement of the related statute, § 1005.

### B. *The Predecessor Statute*

The predecessor to § 656 was 12 U.S.C. § 592 (Rev.Stat. § 5209), which utilized language substantially the same as that of the current statute.[5] The Supreme Court,[6] the Fifth Circuit,[7] and other circuits [8] had held

---

**5.** The primary difference is the omission in the current statute of the language "with intent to injure or defraud." However, courts almost uniformly have judicially imposed the element of intent to injure or defraud, noting that the legislative history indicates that § 656 was not intended to change the meaning or substance of the preexisting law. *See, e.g., United States v. Docherty,* 468 F.2d 989, 994 (2nd Cir.1972); *United States v. Mann,* 517 F.2d 259, 267 (5th Cir.1975); *Williamson v. United States,* 332 F.2d 123, 134 n. 16 (5th Cir.1964); *see also Hernandez v. United States,* 608 F.2d 1361, 1364 (10th Cir.1979); *United States v. Beran,* 546 F.2d 1316, 1321 (8th Cir.1976), cert. denied, 430 U.S. 916, 97 S.Ct. 1330, 51 L.Ed.2d 595 (1977); *Ramirez v. United States,* 318 F.2d 155, 157–58 (9th Cir.1963); *but see United States v. Twiford,* 600 F.2d 1339, 1343 (10th Cir.1979); *United States v. Riebold,* 557 F.2d 697, 701 (10th Cir.1977).

**6.** *Evans v. United States,* 153 U.S. 584, 592, 594, 14 S.Ct. 934, 938, 38 L.Ed. 830 (1894) ("The criminality really depends upon the question whether there was, at the time of the discount, a *deliberate purpose* on the part of the defendant to defraud the bank of the

amount" and "the gravamen of the offense consists in the *evil design* with which the misapplication is made ....") (emphasis added); *United States v. Britton,* 108 U.S. 193, 199, 2 S.Ct. 526, 531, 27 L.Ed. 701 (1883) (The defendant's conduct "might be an act of maladministration on the part of the defendant. It might show neglect of official duty, indifference to the interests of the association or breach of trust, and subject the defendant to the severest censure and to removal from office; but to call it a criminal misapplication by him of the moneys and funds of the association would be to stretch the words of this highly penal statute beyond all reasonable limits.").

**7.** *Pearce v. United States,* 192 F. 561, 562 (5th Cir.1911) ("[T]he only intent necessary to be proved was that the plaintiff in error did the acts complained of purposely or designedly.").

**8.** *Johnson v. United States,* 95 F.2d 813, 818 (4th Cir.1938) (Error to omit instruction that jury must find the defendant bank officer "had knowledge of ... [the named borrowers] financial weakness or of the infirmity of the note."); *Morrissey v. United States,* 67 F.2d 267, 277

that knowledge or purpose was the required mens rea for the predecessor statute. The legislative history of § 656 makes it clear that no change of substance or meaning was intended. The Reviser's Note to 18 U.S.C.A. § 656 asserts: "The original section, containing more than 500 words, was verbose, diffuse, redundant, and complicated .... The revised section *without changing in any way the meaning or substance of existing law,* clarifies, condenses, and combines related provisions largely rewritten in matters of style." (Emphasis added.) *See also Williamson v. United States,* 332 F.2d 123, 133 n. 15 (5th Cir.1964) ("The statute, 18 U.S.C.A. § 656, is a recodification of former 12 U.S.C.A. § 592.... Therefore, the old cases under 12 U.S.C.A. § 592 are pertinent."). *See generally United States v. Klock,* 100 F.Supp. 230, 232–233 (N.D.N.Y.1951), *rev'd on other grounds,* 210 F.2d 217 (2d Cir.1954) (general review of the legislative history of § 656 with respect to the "intent to injure or defraud" requirement).

### C. *The Positions of Other Circuit Courts of Appeal*

The Fifth Circuit's rule permitting a conviction under § 656 based on a reckless disregard of a bank's interest stands alone. Cases in the other circuits uniformly state that knowledge is the proper mens rea standard for § 656.

One of the leading cases in the area is the First Circuit's decision in *United States v. Gens,* 493 F.2d 216 (1st Cir.1974). There the defendant, Gens, helped two other defendants, Porter and Carleton, gain control of a Massachusetts bank. Porter and Carleton were officers and directors of the bank, and Gens was a director. After Gens reached his loan limit with the bank, he arranged for eight additional loans to other borrowers, who then turned the loan proceeds over to Gens. Among the named borrowers on the eight loans were Gens' business partner and two attorneys who did substantial legal work for Gens. Another loan was made to a neighbor and close friend of Gens who was asked to sign the note alone, in part because Gens had borrowed up to his limit and despite the fact that the proceeds were to be used for a joint investment for the friend and the three defendants. The First Circuit reversed the § 656 convictions of the three defendants, in part because the jury instructions erroneously permitted a finding of guilty if the jury found no more than that the defendants granted loans to named debtors knowing that the proceeds would be turned over to Gens. Noting that a bank official innocently and properly could make loans to a financially capable party, even though the officer may know that the named borrower plans to turn around and lend the proceeds to a third party, the court held that more is required before there is a violation of § 656. The court held that there could be criminal responsibility in three situations: (1) where the bank official *knows* that the named debtor is either fictitious or wholly unaware that his name is being used; (2) where the banker *knows* that the named debtor is financially incapable of repaying the loan whose proceeds are being passed on to a third party; and (3) where the banker assures the named debtor, regardless of his financial capabilities, that the bank would look for repayment only to the third party who actually receives the proceeds. In other words, there must be *knowing participa-*

---

(9th Cir.1933), *cert. denied* 293 U.S. 566, 55 S.Ct. 77, 79 L.Ed. 666 (1934) (Instruction equating reckless act to willful one not error because modified "to the effect that the jury was not required as a matter of law to presume an intent to defraud from mere recklessness ...."). *See also Prettyman v. United States,* 180 F. 30, 34 (6th Cir.1910) ("The conduct of Littich, the cashier, in *recklessly* paying overdrafts, and that of Prettyman, the vice president, in insisting upon and accepting excessive accommodations for the woolen company of which he was then the chief executive officer, were most reprehensible and altogether lacking in faithfulness to the trust reposed in them by the stockholders of the bank and merits the severest condemnation .... But gross maladministration and inexcusable breach of duty on the part of its officers in the management of a national bank, however disastrous such conduct may be to its stockholders, are not punishable unless they come within the provisions of section 5209 of the Revised Statutes.") (emphasis added).

*tion* in a loan which is de facto to the third party to whom the bank would be unwilling to make a formal loan. *See* 493 F.2d at 221–22. The jury instructions in *Gens* permitted a finding of guilty *merely* upon the jury's finding that the defendant bankers knew that the loan proceeds would be turned over to Gens. Holding that criminal responsibility under § 656 *also* requires *knowledge* that the named borrowers were financially incapable of repaying the loan or *knowing participation* in a deceptive scheme, the court reversed.[9] Thus, with respect to the mens rea issue before us, the *Gens* opinion establishes the First Circuit position as requiring *knowing* participation in a deceptive arrangement.

Similarly, when considering an appellant's claim that a grand jury was not sufficiently informed about the meaning of "wilfully misapplied" before returning an indictment, the Second Circuit held that the "judge correctly charged that misapplication occurs when an officer of a bank *knowingly* lends money to a fictitious borrower or causes the loan to be made to his own benefit, concealing his interest from the bank." *United States v. Fortunato*, 402 F.2d 79, 81 (2nd Cir.1968) (emphasis supplied), *cert. denied*, 394 U.S. 933, 89 S.Ct. 1205, 22 L.Ed.2d 463 (1969). Subsequently, in *United States v. Docherty*, 468 F.2d 989 (2d Cir.1972), two Second Circuit judges vigorously debated whether the defendant had violated § 656, but both clearly indicated that knowledge was the required mental state. Judge Friendly wrote that "to support a conviction for aiding and abetting in a 'wilful misapplication,' the alleged aider or abettor must have *knowledge* that the officer intended to effect a conversion." *Id.* at 993 (emphasis added). Although Judge Lumbard dissented because he believed that the defendant had the mental state necessary to support a § 656 conviction, he agreed that knowledge was the proper standard. Judge Lumbard wrote that "[t]o be convicted under section 656 [the defendant] must have *known* that [the bank officer] was effecting a conversion of bank funds." *Id.* at 996 (emphasis added).

The Third Circuit also has held that knowledge is the appropriate mens rea for § 656. In a fact situation similar to that in *Gens,* the Third Circuit approvingly quoted the three examples of criminal responsibility set out in *Gens* and then held:

> The appellants contend that the trial court's instructions were erroneous because the court failed to charge the jury that it must find that Fredenburgh [the bank officer] *knew* that those named as debtors lacked the ability or intent to repay the loans. We agree.

*United States v. Gallagher*, 576 F.2d 1028, 1046 (3rd Cir.1978) (emphasis added).[10]

---

9. With respect to all of the loans except one, the court also held that the evidence was insufficient because the named borrowers were financially capable and did recognize their obligation to repay the loan. With respect to the loan to the friend and neighbor, the court remanded for a new trial because, even though the friend was clearly financially capable, the evidence would permit either a finding of a true loan to the friend or a finding that the defendants knowingly participated in a deceptive scheme, i.e., that the purported loan to the friend was a de facto loan to Gens and that the friend was not to be called on to repay.

10. *United States v. Krepps,* 605 F.2d 101 (3d Cir.1979), quotes language from several cases which suggests that reckless disregard of a bank's interest may be sufficient to support a § 656 conviction. *Id.* at 104. However, the primary focus of *Krepps* is on a different issue. As noted in the text, *United States v. Gallagher* had reversed the conviction of a bank officer who had authorized loans to named debtors but knew the funds were intended for a third party. The Third Circuit had found that the trial judge erred when he failed to instruct the jury that the officer had to *know* that the named debtors lacked the ability or intent to repay. (In addition, the court implicitly approved that portion of the instruction which stated that the misapplication had to be "done knowingly and with a specific intent to defraud a bank." *Id.* at 1046). Subsequently, in *Krepps,* the Third Circuit held that the bank officer need not have knowledge that the named debtor lacks the ability or intent to repay when the bank officer *himself* is the intended beneficiary of the funds. Thus, *Krepps* deals with a markedly different fact situation: the defendant in *Krepps* obviously had knowledge that he was participating in a deceptive scheme, and the court had no occasion to consider whether a § 656 conviction could be based on a recklessness mens rea

In *United States v. Arthur,* 544 F.2d 730 (4th Cir.1976), the Fourth Circuit also indicated that knowledge was the required mental state for a § 656 violation. The district court had instructed the jury that "intent to injure or defraud the bank exists if you find that the defendant acted knowingly and that the natural result of his actions were [sic] to injure or defraud the bank, even though this may not have been his motive." *Id.* at 736. The court of appeals found that the latter portion of the charge was erroneous because it "directed, rather than permitted, the finding of the fact of intent 'as the natural result of his actions.'" *Id.* at 737. However, the court implicitly approved that portion of the instruction which required the jury to find that the defendant acted knowingly. *Id.*[11]

The law of the Sixth Circuit is in accord. In *Logsdon v. United States,* 253 F.2d 12 (6th Cir.1958), the defendant Logsdon was tried for aiding, abetting and inducing co-defendant Barrett, acting as cashier of the bank, to willfully misapply bank funds. The evidence showed that over a period of years Logsdon wrote checks on his personal or business accounts for over $500,000. The checks were paid by the co-defendant cashier, but were hidden away and never charged to the defendant's account. The court recognized that the defendant's knowledge of the scheme was required for a conviction, stating:

> The crucial issue in the case would seem to be whether the appellant *knew* that the cashier was paying his checks out of the bank's funds and hiding the checks away. If he had such *knowledge* and continued over a course of years to engage in a course of conduct which so misapplied the funds of the bank and which required the expected collaboration of the cashier to make it successful, we think the evidence was sufficient to take the case to the jury....

253 F.2d at 15 (emphasis added). The court also expressly articulated the proper role of recklessness, pointing out that the defendant's reckless conduct can be the basis for an *inference* of intent to injure or defraud:

> Intent may be shown by circumstantial evidence, and in criminal cases, that is usually the only evidence available. A *reckless disregard* of the interests of the Bank, as shown by the evidence in this case, *was sufficient to warrant a finding* by the jury of an intent to injure or defraud the Bank.

*Id.* (emphasis added).[12]

The Seventh Circuit's decisions regarding the mental state required for a § 656 con-

---

rather than knowledge. Thus, *Krepps* does not cast doubt on *Gallagher.* In fact, the *Krepps* court quotes from and expressly approves the *Gallagher* holding. 605 F.2d at 105–06. Consequently, we believe that the Third Circuit cases require that the defendant *knowingly* participate in a deceptive scheme in order to be convicted under § 656.

11. It is true that the adequacy of the charge including the recklessness standard was not squarely considered by the court in *Arthur.* However, an earlier Fourth Circuit decision, *Johnson v. United States,* 95 F.2d 813 (4th Cir.1938), provides further evidence that knowledge is the required mental state to support a conviction for misapplication of bank funds. In that case, decided under the predecessor to § 656, the Fourth Circuit reversed the defendant's conviction because "[i]t was not left to the jury to find from the evidence whether or not the defendant had *knowledge* of [the named borrower's] financial weakness or of the infirmity of the note." *Id.* at 818 (emphasis added).

12. A recent Sixth Circuit case, *United States v. Franklin,* 608 F.2d 241 (6th Cir.1979), contains language suggesting that intent to injure or defraud "includes a reckless disregard of the interests of the bank." *Id.* at 244. However, the court cites *United States v. Cooper,* 577 F.2d 1079 (6th Cir.1978), which approved a charge stating that "'acts knowingly done with a reckless disregard for the interests of the bank *may justify* a finding of intent to defraud or injure'" because "a reckless disregard *will support an inference* of intent to injure," *id.* at 1083 (emphasis added), and *United States v. Wilson,* 500 F.2d 715 (5th Cir.1974), *cert. denied sub nom., White v. United States,* 420 U.S. 977, 95 S.Ct. 1403, 43 L.Ed.2d 658 (1975), which relied on *Logsdon v. United States,* the Sixth Circuit case discussed in the text. Thus, despite the ambiguous language in *United States v. Franklin,* we believe that *Logsdon* is still good law and that the mens rea standard in the Sixth Circuit is knowledge, with reckless disregard merely being "sufficient to warrant a

viction are, like our own, somewhat problematical. Several early Seventh Circuit decisions approved jury instructions which required the government to establish "specific intent" by proving "that the defendant *knowingly* did an act which the law forbids *purposely* intending to violate the law. Such intent may be determined from all the facts and circumstances surrounding the case . . . ." *United States v. Johnson,* 447 F.2d 31, 34 n. 3 (7th Cir.1971) (emphasis added). *See also United States v. Mullins,* 355 F.2d 883, 887 (7th Cir.), *cert. denied,* 384 U.S. 942, 86 S.Ct. 1465, 16 L.Ed.2d 540 (1966). However, in the most recent case directly involving the mental state requirement for § 656, *United States v. Larson,* 581 F.2d 664 (7th Cir.1978), the court stated that "[a] reckless disregard by a bank official of his bank's interest is sufficient to establish the requisite intent to defraud." *Id.* at 667. The cases cited in support of this statement do not indicate that reckless disregard is actually equivalent to intent to defraud, but simply confirm that the trier of fact is permitted to *infer* intent to defraud from a bank official's recklessness.[13] Further, the *Larson* court itself appears to have made this critical distinction later in the opinion when it elaborated on the concept of intent, stating:

> The question of one's intent is not measured by a psychic reading of his mind but

by the surrounding facts and circumstances; *i.e.,* circumstantial evidence. It takes only common sense and good conscience under the facts recited above to reach a *permissible inference* that Larson *deliberately* misapplied the Elkhorn Bank's funds to further his personal interest.

*Id.* (emphasis added). Thus, although we acknowledge that the *Larson* court's use of the recklessness language is somewhat loose, we think that the decision is best read as holding that recklessness can properly serve as the basis for a permissible inference of deliberate intent.

It is true that a later Seventh Circuit decision, *United States v. McAnally,* 666 F.2d 1116, 1119–20 (7th Cir.1981), suggests in dicta that *Larson* equated recklessness with intent to injure or defraud for § 656 purposes. However, *McAnally* goes on to note that, even if *Larson* so held, § 656 requires not only intent to injure or defraud, but also requires willful misapplication, "a term that in itself connotes criminal wrongdoing." *Id.* at 1120. Consequently, even if the *McAnally* dicta is the proper interpretation of *Larson,* the Seventh Circuit still requires a higher *mens rea* for a § 656 conviction than mere recklessness.

The Eighth Circuit also has concluded that knowledge, not recklessness, is the re-

finding . . . of an intent to injure or defraud the Bank." *Logsdon v. United States,* 253 F.2d at 15.

**13.** The court cited five cases to support the statement quoted in the text. Three of those cases clearly indicate that knowledge is the proper mens rea standard for § 656, but that a jury can infer such intent from recklessness. *See United States v. Killian,* 541 F.2d 1156, 1159–60 (5th Cir.1976) ("Deliberate misapplication of bank funds suffices. . . . [T]he term 'willful' means only that the actor knows and intends what he is doing"); *United States v. Kaczmarek,* 490 F.2d 1031, 1035 (7th Cir.1974) ("the evidence strongly supports the jury's conclusion with respect to unlawful intent to injure or defraud because of Kaczmarek's obvious reckless disregard for the interests of [the bank]"); *Giragosian v. United States,* 349 F.2d 166, 168 (1st Cir.1965) (defendant may act with such a reckless disregard "as to justify a finding of an intent to injure or defraud"). Another authority cited by the *Larson* court, *United*

*States v. Mann,* 517 F.2d 259, 270 n. 7 (5th Cir.1975), does not directly address the intent issue. Only *United States v. Stevison,* 471 F.2d 143 (7th Cir.1972), has language suggesting that reckless disregard equals intent to defraud. In that case, the court rejected appellant's contention that there was insufficient evidence to establish intent to defraud. The court concluded that the jury could infer "that the essential element of intent or 'reckless disregard' of the Bank's interest was proven." *Id.* at 145. The *Stevison* court then quoted *Giragosian v. United States,* 349 F.2d 166, 168–69 (1st Cir.1965), which clearly placed recklessness in its proper role, holding that recklessness can justify an inference of intent to injure or defraud. Moreover, the *Stevison* court clearly indicated that willful misapplication is a specific intent crime. 471 F.2d at 145. Thus, we believe that the best reading of *Stevison,* like the other cases cited by *Larson,* merely indicates that intent to defraud can be inferred from recklessness.

quired mens rea under § 656. In *Snyder v. United States,* 448 F.2d 716 (8th Cir.1971), the Eighth Circuit reversed the defendants' convictions for aiding and abetting the embezzlement and misapplication of bank funds because there was "no evidence that [the defendants] either knew or must have known that the bank's funds were being embezzled and that they were receiving the proceeds." *Id.* at 719. The court concluded that the defendants' "conduct might be viewed as naive *and perhaps reckless* but it does not appear to be criminal." *Id.* (emphasis added).

In *United States v. Dreitzler,* 577 F.2d 539 (9th Cir.1978), the Ninth Circuit approved jury instructions on the definition of "willfully" in § 656 which stated that " 'an act is done willfully if done voluntarily and intentionally with *knowledge* that it is against the law.'" *Id.* at 549 (emphasis added). Another recent Ninth Circuit decision, *United States v. Beattie,* 594 F.2d 1327 (9th Cir.1979), approved an indictment for a § 656 violation which alleged that the "defendant 'with intent to defraud and injure' the bank 'did wilfully and *knowingly* misapply or caused to be misapplied monies' of the bank in that said defendant did cause a specified loan to be made by the bank to a specified individual '*knowing* that [such individual] was not the actual beneficiary of the loan.'" *Id.* at 1329 (emphasis added). Admittedly, the Ninth Circuit did not have to decide whether a lower mens rea standard might support a § 656 conviction in either of these cases, but that court has

never approved instructions which included a recklessness standard. Moreover, an earlier Ninth Circuit opinion, *Benchwick v. United States,* 297 F.2d 330 (9th Cir.1961), indicated that knowledge is the proper mens rea standard under § 656, and properly pointed out that knowledge (or "specific intent to injure or defraud") could be *inferred* from a reckless disregard of the bank's interest. *Id.* at 333 n. 5. See text after note 14 *infra.*

Finally, the Tenth Circuit also has held that knowledge is the proper mens rea standard for § 656. In *United States v. Cooper,* 464 F.2d 648 (10th Cir.1972), *cert. denied,* 409 U.S. 1107, 93 S.Ct. 901, 34 L.Ed.2d 688 (1973), the Tenth Circuit held that "[t]he offense of 'misapplication occurs when an officer of a bank *knowingly* lends money to a fictitious borrower or causes the loan to be made to his own benefit, concealing his interest from the bank.'" *Id.* at 651 (quoting *United States v. Fortunato, supra* ) (emphasis added). *See also Laws v. United States,* 66 F.2d 870 (10th Cir.1933) (holding, under predecessor statute, that specific intent is an element of the offense of misapplication of bank funds).

We acknowledge that several circuit court cases discussing the mental state required under § 656 contain loose references to recklessness.[14] However, in most of those cases the issue on appeal was sufficiency of the evidence, and courts have not always been careful to distinguish the test for determining the sufficiency of the evi-

---

**14.** *See e.g., United States v. Schoenhut,* 576 F.2d 1010 (3rd Cir.1978). The *Schoenhut* court held that "in the absence of proof that he *knew* of the false and fraudulent practices being committed ... the evidence is insufficient." *Id.* at 1025 (emphasis added). However, the opinion contains dicta in two places which indicate that recklessness might be sufficient. *Id.* at 1024. Significantly, the recklessness dicta immediately follows a statement that intent may be inferred. *See also United States v. Thomas,* 610 F.2d 1166, 1174 (3rd Cir.1979) (recklessness language immediately follows a statement that intent may be inferred); *United States v. Stevison,* 471 F.2d 143, 145 (7th Cir.1972) (authority cited for recklessness language was *Giragosian v. United States,* 349 F.2d 166, 168 (1st Cir. 1965); however, the First Circuit case express-

ly and properly referred to recklessness as justifying an *inference* of intent). *See also Krepps,* 605 F.2d 101 (3d Cir.1979) (discussed in note 10 *supra* ); the Fifth Circuit cases discussed in Part II.D. *infra;* Annot., 51 A.L.R. Fed. 420, 432 (1981) (listing cases which "express the view that to sustain a conviction for misapplication of funds under 18 U.S.C.A. § 656 the government must show that the defendant intended to injure or defraud the bank, and that a showing of conduct in reckless disregard of the bank's interest is sufficient to meet this requirement;" cases cited in addition to *United States v. Welliver, supra,* include *Giragosian v. United States, supra,* which clearly holds that the requisite intent may be *inferred* from recklessness, and most of the sufficiency of the evidence cases cited in this note).

dence from the proper instructions to be given to the jury. Where sufficiency is at issue, a finding that an accused acted recklessly may be enough to sustain a jury verdict, because a jury may properly *infer* the requisite intent. This proper use of recklessness as an inference of intent is expressly recognized in many cases. *See, e.g., United States v. Cooper,* 577 F.2d 1079, 1083 (6th Cir.1978) ("Acts knowingly done with a reckless disregard for the interests of the bank *may justify* a finding of intent to defraud or injure the bank") (emphasis added); *United States v. Larson,* 581 F.2d 664, 667 (7th Cir.1978) (following the statement that reckless disregard is sufficient to establish intent to defraud, the court notes that intent is not measured by a psychic reading of the defendant's mind, but rather by the surrounding facts and circumstances, and concludes that *deliberate* misapplication was a *permissible inference* under the facts there); *United States v. Kaczmarek,* 490 F.2d 1031, 1035 (7th Cir.1974) (evidence supports jury's conclusion with respect to unlawful intent to injure or defraud, because of defendant's obvious reckless disregard for the interests of the bank); *Giragosian v. United States,* 349 F.2d 166, 168 (1st Cir.1965) (defendant must have acted with such a reckless disregard of the bank's interests *as to justify* a finding of intent to injure or defraud); *Benchwick v. United States,* 297 F.2d 330, 333 n. 5 (9th Cir.1961) (pointing out that while the specific intent necessary for a § 656 conviction may not be conclusively presumed from a reckless disregard of the bank's interests, "specific intent, like any other fact, may be inferred from all the relevant circumstances . . . ."); *Logsdon v. United States,* 253 F.2d 12, 15 (6th Cir.1958) ("A reckless disregard of the interests of the Bank, as shown by the evidence in this case, was *sufficient to warrant a finding* by the jury of an intent to injure or defraud the Bank.") (emphasis added); *Morrissey v. United States,* 67 F.2d 267, 277 (9th Cir.1933) (under predecessor statute, the court regarded recklessness as a

mere circumstance from which the jury could determine real intent).

In summary, we believe that a careful reading of the cases from other circuits reveals a uniform rule that the appropriate mens rea standard for § 656 is *knowledge.* The Eighth Circuit has explicitly rejected the lower recklessness standard. The First, Sixth and Ninth Circuits have adopted knowledge as the proper mens rea, expressly placing recklessness in its proper role as evidence from which intent may be inferred.[15] The Second, Third, Fourth and Tenth Circuits have all either stated or held, without discussion, that knowledge is the proper mens rea standard. Further, although imprecise language occasionally has led to confusion, courts generally recognize that the proper role of recklessness is that it may justify an inference of intent to injure or defraud. Such a reading of the case law is buttressed by the government's brief in this case which, after surveying a number of cases, states:

> It is nowhere suggested that "recklessness" is the standard of intent under any element of § 656. Rather, "reckless disregard" has always been used . . . to describe the kind of activity the jury must find from the facts before considering whether to make the permissible inference that such activity demonstrated an intent to injure or defraud the bank.

Brief of Appellee at 13. Thus, by the government's own admission, the Fifth Circuit's rule, as stated in the outline of cases leading up to *Welliver,* is inconsistent with the case law of the other circuits. Moreover, as discussed below, numerous other Fifth Circuit cases cast considerable doubt upon the rule.

### D. *Previous Fifth Circuit Cases.*

The *Welliver* Court cited two former Fifth Circuit decisions, *United States v. Wilson,* 500 F.2d 715 (5th Cir.1974), *cert. denied sub nom., White v. United States,* 420 U.S. 977, 95 S.Ct. 1403, 43 L.Ed.2d 658

---

**15.** Our reading of *United States v. Larson, supra,* places the Seventh Circuit in this category

as well. *See* text accompanying note 13 *supra.*

(1975), and *United States v. Reynolds,* 573 F.2d 242 (5th Cir.1978), to support its holding that recklessness is sufficient to satisfy the intent requirement of § 656. *See United States v. Welliver,* 601 F.2d at 210. Both of the cited cases contain the following language: "[R]eckless disregard of the interest of a bank is, for the purpose of 'willful misapplication,' the equivalent of intent to injure or defraud." Although the evolution of the rule is thus understandable, we now believe that a careful examination of the issues and authorities discussed in *Wilson* and *Reynolds* reveals that we erred when we held in *Welliver* that a jury is properly charged that recklessness is the equivalent of intent to injure or defraud.

In *United States v. Wilson, supra,* the appellant sought to overturn his conviction on the ground that the term "willfully misapplied" in § 656 was unconstitutionally vague. The court rejected this argument, noting that courts had adequately defined the term to cover actions which, while "not covered by the technical terms 'embezzlement' or 'abstraction'" are "obviously improper and amount to the unjustified use of bank funds and which amount to more than mere bad judgment or maladministration." *Id.* at 720. The court then made the statement on which *Welliver* relied: "Recent cases have held that reckless disregard of the interest of a bank is, for the purpose of 'willful misapplication,' the equivalent of intent to injure or defraud." *Id.* Clearly, that statement was dictum. More importantly, the cases cited for that proposition were *Logsdon v. United States,* 253 F.2d 12 (6th Cir.1958), and *Giragosian v. United States,* 349 F.2d 166 (1st Cir.1965), neither of which held that recklessness was the *equivalent* of willfulness or intent to defraud. Rather, both cases properly state that reckless disregard can justify an *inference* of intent.

In *United States v. Reynolds, supra,* the second case cited in *Welliver,* the appellant challenged his conviction on the ground that there was insufficient evidence of intent and willfulness under § 656. In rejecting the appellant's argument, the court first quoted the statement from *United States v. Wilson, supra,* regarding recklessness being the equivalent of intent to defraud. However, the court went on to state: "Such was the conduct of defendant Reynolds described above, and the jury was entitled *to infer intent* from these facts." *Id.* at 245 (emphasis added). Like numerous other cases involving the sufficiency of the evidence, *Reynolds* contains what we now regard as loose language regarding recklessness; we believe that the case is best read as holding merely that reckless disregard justifies an *inference* of intent to defraud.

Although the evolution of the rule in the *Wilson-Reynolds-Welliver* line of cases represents an understandable translation of recklessness as a proper basis for inferring intent to recklessness as the equivalent of intent, we now view that translation as error. Numerous other Fifth Circuit decisions suggest, albeit without holding, that knowledge is the required *mens rea* for a § 656 conviction.[16] *See, e.g., United States v. Farrell,* 609 F.2d 816, 820 (5th Cir.1980) (reaffirming the rule that "the intent to injure or defraud the bank 'is proven by showing a knowing, voluntary act by the defendant'"); *United States v. Southers,* 583 F.2d 1302, 1305 (5th Cir.1978) (stating that "[t]his Circuit has adopted the rule that the requisite intent is proven by showing a knowing, voluntary act by the defendant"); *United States v. Tidwell,* 559 F.2d 262, 266 (5th Cir.1977) (required intent for § 656 violation exists if a person "acts knowingly"), *cert. denied,* 435 U.S. 942, 98 S.Ct. 1520, 55 L.Ed.2d 538 (1978); *United*

---

**16.** The decisions cited in the text all rejected contentions raised by the defendants, and the use of language suggesting a *mens rea* of knowledge might merely imply that the defendants were not entitled to prevail even if given the benefit of a more favorable mental state requirement than that to which they were otherwise entitled. Nevertheless, we believe that the dicta in these cases, which seem to construe § 656 to require knowledge, provide further evidence that the rule as stated in the *Welliver* line of cases does not rest on a strong foundation in this circuit.

*States v. Killian,* 541 F.2d 1156, 1160 (5th Cir.1976) (noting "that the term 'willful' means only that the actor knows and intends what he is doing"). Further, as noted above, the Fifth Circuit required the government to prove purpose or knowledge in order to convict a defendant of misapplication of bank funds under the predecessor to § 656. *See Pearce v. United States,* 192 F. 561, 562 (5th Cir.1912) (where the charge is willful misapplication of bank funds, "the only intent necessary to be proved was that the [defendant] did the acts complained of purposely or designedly").

### E. Mens Rea for Companion § 1005

As noted in Part II.B., *supra,* the predecessor to § 656 was 12 U.S.C. § 592 (Rev. Stat. 5209). In 1948, Congress separated § 592 into three distinct sections: § 334, a seldom-invoked provision which deals with the issuance and circulation of Federal Reserve Notes; § 656; and § 1005, which deals with false entries in bank records and the wrongful issuance of bank obligations. The Reviser's Note accompanying § 656 indicates that the reason for the division of § 592 into separate sections was that "[t]he original section, containing more than 500 words, was verbose, diffuse, redundant, and complicated." In addition, the notes accompanying § 656 and § 1005 both state that the revision was not intended to change the "meaning or substance" of existing law.

This historical background suggests that the *mens rea* standard for § 656 should be consistent with the standard for the crime of making false entries under § 1005. Both offenses derive from the same predecessor statute, and both require the government to prove that the defendant had "intent to injure or defraud" the bank.[17] Thus, we believe it is significant that none of the circuit courts of appeals have held that a reckless disregard of the interest of a bank is the proper mens rea standard for § 1005. Moreover, two circuit courts recently have reversed convictions under § 1005 because the jury instructions permitted a guilty verdict based upon a finding of recklessness.

One of the recent cases reversing a § 1005 conviction was *United States v. Welliver, supra,* the same decision which permitted a recklessness standard for § 656 violations in this circuit. The court reversed the § 1005 conviction because the trial judge had charged that "reckless disregard" was the equivalent of intent to injure or defraud under § 1005. The court stated that "[a]s pertains to § 1005, [the Fifth Circuit] has never held 'recklessness' to be sufficient to satisfy the specific intent requirement, nor do we think it should be." 601 F.2d at 210. The court went on to note that "[w]hen a trial judge in his instructions refers to 'recklessness', no more is necessarily implied than such mere negligence, carelessness, thoughtlessness, or inadvertence as could not be regarded as the equivalent of an intentional wrong." *Id.*

Similarly, in *United States v. McAnally,* 666 F.2d 1116 (7th Cir.1981), the Seventh Circuit reversed a § 1005 conviction because the trial court had instructed the jury that "[a] reckless disregard by a bank official of his bank's interest is sufficient to establish the requisite intent to defraud." *Id.* at 1118. The court held that "the false-entry offense is one of intent and not of carelessness," *id.* at 1119, and persuasively explained the strong policy reasons influencing its decision. The court stated:

There must be at least a hundred thousand bank officers in this country, many of them, like McAnally, young and inexperienced employees of small and unsophisticated banks. These officers make in the aggregate millions of entries in the books of their banks every day; no doubt many of those entries are inaccurate; and many of the inaccuracies are probably due to negligence, some of it gross. We do not think Congress meant to expose all of these bank employees to felony prosecutions; the danger that the heavy penalties prescribed in section 1005 would overdeter, with resulting social costs vividly described in a different context by the Supreme Court in *United States v.*

17. *See* note 5 *supra.*

*United States Gypsum Co.,* 438 U.S. 422, 440–43, 98 S.Ct. 2864 [2875–76] 57 L.Ed.2d 854 (1978), would be too great. *Id.*

We believe that the policy considerations which prompted the *Welliver* and *McAnally* courts to hold that recklessness is not sufficient to satisfy the specific intent requirement of § 1005 also apply to § 656. For example, the same bank employees who make entries in bank books which might result in a false entry also make loans which might constitute a misapplication. In either case, we do not believe that Congress intended that bank employees engaged in routine transactions, such as making book entries or making loans, should be exposed to felony prosecutions unless they act knowingly. Thus, we believe that the rules which courts have developed for § 1005, establishing knowledge as the proper mens rea standard and requiring that the jury instructions do not equate recklessness with intent to injure or defraud, also should be applied to § 656.

F. *Conclusion: § 656 Prong of United States v. Welliver Overruled.*

■ For the reasons discussed above, we conclude that the appropriate mens rea standard for § 656 is knowledge. In order to convict a defendant for willfully misapplying funds with intent to injure or defraud a bank, the government must prove that the defendant *knowingly* participated in a deceptive or fraudulent transaction. The trier of fact may infer the required intent, *i.e.,* knowledge, from the defendant's reckless disregard of the interest of the bank; however, jury instructions should not equate recklessness with intent to injure or

defraud. Our conclusion is amply supported by the cases interpreting the predecessors to § 656, by the holdings of cases from other circuits, by Fifth Circuit cases other than the line of cases culminating in *Welliver,* by the equivalent mens rea standard of the companion § 1005, and by sound policy considerations. Accordingly, we overrule that portion of *United States v. Welliver,* 601 F.2d 203 (5th Cir.1979),[18] which held that the proper mens rea standard for § 656 was a reckless disregard of the interests of the bank.

## III. THE § 656 JURY INSTRUCTIONS

Having determined that knowledge is the proper mens rea standard for § 656, we must decide whether the charge in this case erroneously permitted the jury to apply the lower recklessness standard to the element of willful misapplication with intent to defraud. If the jury charge did equate reckless disregard with the required higher standard of knowledge, *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), mandates a reversal of appellant's § 656 conviction.

Appellant took exception to the jury instructions, asserting that they improperly equated recklessness with the requisite mens rea element of the crime. Appellant pointed specifically to the following charge:

A reckless disregard of the interest of the bank is the equivalent of intent to injure or defraud the bank.

Record on Appeal, Vol. VIII at 21.

■ The dissenting judges argue[19] that the instructions considered as a whole fairly and accurately state the law. It is true, of course, that a jury charge must be judged as a whole. However, looking to the entire

18. A subsequent Fifth Circuit case, *United States v. Salinas,* 654 F.2d 319 (5th Cir.1981), appears to follow *Welliver,* stating that the defendants "had the requisite intent to violate section 656 since they acted, at minimum, with reckless disregard for the interests of the bank." *Id.* at 327. However, the court notes that the defendants "must have *known* that their actions ... would have 'a natural tendency to injure the bank.' " *Id.* (emphasis added). The court then states that "[a] reasonably minded jury could so conclude from [the defendants'] testimony...." *Id.* Thus, while

certain language in *Salinas* appears to follow *Welliver,* the court actually found that the defendants acted with knowledge or, at least, that the jury could properly infer that they acted with knowledge. Nevertheless, to the extent that *Salinas* follows *Welliver* in lowering the mens rea standard for § 656 to reckless disregard, we also overrule *Salinas* today.

19. This argument was not made by the government in brief or oral argument before the panel nor was it made to the en banc court. The government's brief took the position that the charge did not equate reckless disregard with

charge only compounds the problem in this case. The trial judge also charged as follows:

> I charge you that the element of criminal intent necessary for conviction for a willful misapplication of bank funds is not fulfilled by a mere showing of indiscretion or foolhardiness on the part of the bank officer. His conduct must amount to *reckless disregard* of the bank's interests or outright abstraction of funds.

Record on Appeal, Vol. VIII at 23 (emphasis added). Two paragraphs later the trial judge defined "willful" in terms of the highest mens rea standard, i.e., purpose, but in the very next sentence stated that recklessness was an additional meaning:

> The word "willful" is *also* employed to characterize a thing done without ground for believing it is lawful, *or conduct marked by a reckless disregard,* whether or not one has the right so to act.

Record on Appeal, Vol. VIII at 23–24 (emphasis added). The foregoing quotations obviously constitute clear and unequivocal instructions that the jury need find only recklessness in order to satisfy the mens rea standard of the crime.

 It might be argued that the following three passages from the jury charge properly informed the jury that a higher mens rea than recklessness was required:

> "[I]ntent to defraud" means to act with intent to deceive or cheat.

*Id.* at 19.

> To act with intent to defraud means to act willfully and with a specific intent to deceive or cheat.

*Id.* at 20–21.

> I charge you that a thing is done willfully if it is done voluntarily and purposefully

and with a specific intent to fail to do what the law requires, that is to say, with an evil motive or a bad purpose, whether to disobey or disregard the law.

*Id.* at 23.

We need not decide whether three correct statements will cure the three incorrect statements,[20] because it is inescapable that the jury could reasonably have thought that, while an intent to deceive or a bad purpose would suffice, it *also* would be sufficient to find recklessness. In other words, the proper charges were not simply inconsistent with the improper charges; rather, the improper charges were made *in addition to* or *the equivalent of* the proper charges. In one instance, the jury instruction expressly states that recklessness is an *additional* meaning. The third proper charge, quoted above, is followed in the next sentence with the third improper charge, also quoted above. Together, they read as follows

> I charge you that a thing is done willfully if it is done voluntarily and purposefully and with a specific intent to fail to do what the law requires, that is to say, with an evil motive or a bad purpose, whether to disobey or disregard the law. The word "willful" is *also* employed to characterize a thing done without ground for believing it is lawful, or conduct marked by a *reckless disregard,* whether or not one has the right so to act.

*Id.* at 23–24 (emphasis added).[21]

Similarly, in another instance the proper charge is followed immediately by language further defining the quality of the required intent, including the tainted language equating recklessness with intent:

---

intent to injure or defraud, but merely permitted the jury to infer such intent from the defendant's recklessness. The government's contention cannot withstand a reading of the judge's instructions.

**20.** See *Perez v. United States,* 297 F.2d 12, 16 (5th Cir.1961) ("It is also fundamental to our jurisprudence that instructions to the jury must be consistent with each other, and not misleading to the jurors. [citation omitted] The fact that one instruction is correct does not cure the

error in giving another that is inconsistent with it.")

**21.** Arguably there is a fourth "proper" charge, a proper definition of the term "willfully" which appeared toward the end of entire jury charge. Record on Appeal, Vol. VIII at 34. However, that charge also is not inconsistent with the above-quoted improper definition of "willful" which is expressly stated as an additional definition. There was nothing in the "proper" charge to negate or cure the express

To act with intent to defraud means to act willfully and with a specific intent to deceive or cheat.

The requirement that the defendant intended to injure or defraud the bank may be shown by an unlawful act, voluntarily done, the natural tendency of which may have been to injure the bank. It is not necessary, however, that actual injury to the bank be shown.

A *reckless disregard of the interest of the bank is the equivalent* of intent to injure or defraud the bank.

*Id.* at 20–21 (emphasis added).

Considering the jury instructions as a whole, we have no doubt that a reasonable juror could have thought that mere recklessness was sufficient to satisfy the element of willful misapplication with intent to defraud.

Our conclusion is supported by the § 1005 holding of *United States v. Welliver,* 601 F.2d 203 (5th Cir.1979), a separate and distinct holding from *Welliver*'s § 656 holding which we overrule today. The § 1005 holding to which we now refer reversed a § 1005 conviction based on a jury charge containing some of the same language as the instant instructions. The paragraph of the instant charge which equates recklessness with intent to injure or defraud, the immediately preceding paragraph, and the immediately following paragraph were taken verbatim from *Welliver. See* 601 F.2d at 209 n. 13. The *Welliver* charge also contained the sentence stating that "[t]o act with intent to defraud means to act willful-

ly and with a specific intent to deceive or cheat," which we noted above was the "proper" charge preceding the equivalency language. The *Welliver* court held that the charge constituted reversible error because it improperly equated recklessness with the requisite mens rea.[22]

If the *Welliver* charge is reversible error, *a fortiori* the instant charge is. The instructions in *Welliver* included only the charge equating recklessness with intent to injure or defraud, whereas the instant charge included not only that charge verbatim, but also included the other two tainted charges quoted above, i.e., charging that the element of criminal intent for willful misapplication amounts to reckless disregard, Record on Appeal, Vol. VIII at 23, and giving the additional definition of the word "willful" as conduct marked by reckless disregard. *Id.* at 23–24. Moreover, the "proper" charges in *Welliver* were more forceful than those in the instant case, primarily because the *Welliver* charge did not contain the explicit indication, as here, that recklessness was an additional meaning for the mens rea terms.[23] If those more forceful "proper" charges in *Welliver* were insufficient to cure the single tainted charge, then *a fortiori* the less forceful "proper" charges here cannot cure the same tainted equivalency charge plus the two additional charges which expressly articulate the erroneous recklessness standard for the element of willful misapplication.

We conclude that reasonable jurors could have interpreted, and indeed most likely did

provision quoted above that recklessness was an additional meaning. Moreover, this fourth "proper" charge came ten pages after the conclusion of the § 656 charge, *i.e.,* after the § 1005 charge, the § 1014 charge and the § 2 charge. The fact that the jury had the written instructions during their deliberations in the jury room increases the possibility that the jury referred only to that portion of the charge dealing with § 656, and not to a provision ten pages later.

**22.** The *Welliver* court was reversing a conviction under 18 U.S.C. § 1005, but the relevant portions of the charge in that case, i.e., the intent to injure or defraud elements, are com-

mon to both § 1005 and § 656. In fact the relevant portions of the charge in *Welliver* applied to both sections. The *Welliver* court reversed only the § 1005 conviction because it held that recklessness *was* the proper mens rea for § 656. We overrule *Welliver's* § 656 holding today. In order to adopt the dissenting judges' reading of the instructions in this case, we also would have to overrule the *Welliver* court's reading of the jury instructions in that case on the § 1005 count.

**23.** See Volume V of the Trial Transcript in *United States v. Welliver, supra,* which contains the entire jury instructions in that case.

interpret,[24] the instructions in this case to establish the erroneous recklessness mens rea standard for the element of willful misapplication with intent to injure or defraud. Accordingly, appellant's conviction on the § 656 count must be reversed.

## IV. THE § 1005 JURY INSTRUCTIONS

■ Although appellant acknowledges that the trial court did not include the improper recklessness charge in its instructions on § 1005, he nevertheless argues that the equation of recklessness with intent to injure or defraud in the preceding instructions on § 656 spilled over and tainted the § 1005 charge. After carefully reviewing the jury instructions, we conclude that appellant's argument has no merit.

There was a clear demarcation between the court's § 656 charge and the § 1005 charge. After quoting the statute and indicating which defendants were indicted on which of the new § 1005 counts, the trial court set forth the essential elements of the § 1005 offense as follows:

> First: That the Defendant *knowingly* made a false entry concerning a material fact in a book or record of an insured bank, as charged;
>
> Second: That the Defendant made such entry *willfully,* with *knowledge* of its falsity and with the intent of *defrauding or deceiving* the person named in the indictment.

Record on Appeal, Vol. VIII at 25–26 (emphasis added). The court also charged the jury:

> I charge you that the crime of making false entries by an officer of a bank with intent to defraud pursuant to this statute includes any entry on the books of the bank which is *intentionally* made to represent what is not true or does not exist, with the intent either to *deceive* the bank's officers or to defraud the bank.

*Id.* at 26.

The § 1005 jury instructions were clear and concise, and did not themselves contain

any inkling of the erroneous recklessness language. We conclude that the § 1005 charge so clearly articulated the proper mens rea standard of knowledge that we are satisfied there was no spillover taint from the improper § 656 charge.

Accordingly, appellant's conviction on the § 1005 count is affirmed.

## V. CONCLUSION

Appellant's conviction on the § 656 count is reversed. His conviction on the § 1005 count and his conviction on the three § 1014 counts are affirmed.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

RONEY and FAY, Circuit Judges, with whom JAMES C. HILL and HATCHETT, Circuit Judges, join dissenting in part:

Most respectfully we dissent as to the reversal of the 18 U.S.C.A. § 656 conviction for two reasons. In an appendix we have set forth all of the statements made by Judge Alaimo in instructing the jury as to the intent that it had to find to convict the defendant. Reading the instruction as a whole, we believe the jury was not misled as to *mens rea* required, even under the highly technical, semantic analysis of the Court's opinion. Although the district court used the words "reckless disregard" and stated that "a reckless disregard of the interest of the bank is the equivalent of intent to injure or defraud the bank," read as a whole, we think the instruction adequately conveyed to the jury the high standard of proof of intent required and the proper options available to the jury in this case.

Second, it seems to us that with all that is said in the Court's opinion, there is a level of reckless disregard that translates immutably into the precise intent espoused by the

---

24. It is apparent the trial judge intended to communicate this interpretation. This intent on the part of the trial judge is not surprising. The instant trial occurred in February 1980, six months after the decision in *United States v.*

*Welliver,* 601 F.2d 203 (5th Cir.1979), which had held that recklessness was the proper mens rea for § 656. As noted above, crucial portions of the charge in this case track verbatim the language of the *Welliver* charge.

majority, with which we have no substantial quarrel. 18 U.S.C.A. § 656 deals with a very limited special group of people. By its very terms this section deals only with officers, directors, agents or employees of covered banks. These individuals have an affirmative duty to protect the funds and assets placed in their care.

As stated by Judge Morgan in *United States v. Wilson,* 500 F.2d at 720:

> It should be remembered above all else that this statute was enacted to preserve the FDIC from loss and to preserve and protect the assets of banks having a federal relationship.

Keeping the legislative history in mind, we have no difficulty in understanding how and why the Fifth Circuit arrived at the point where "a reckless disregard of the interest of the bank is the equivalent of the intent to injure or defraud the bank." The *en banc* court is now changing the law of our Circuit, so that these words cannot be used in a § 656 instruction, no matter what other words are also used. It is a subtle change, however, that in our opinion will probably make no difference in the outcome of any trial and would have made no difference in this one. If applied prospectively, we would not even dissent. We should not, however, reverse a conviction on such a technicality.

As we read the Court's opinion, it will be proper for trial judges to instruct a jury to the effect that in determining whether the defendant is guilty of a willful misapplication of bank funds, it may (or may not) infer such from a reckless disregard of the bank's interest, if such existed. Then on appeal in determining the sufficiency of the evidence and whether the government has established the necessary intent to injure or defraud the bank, a showing of conduct amounting to a reckless disregard of the bank's interest will meet this requirement. The distinction between instructing a jury that reckless disregard is the equivalent of the requisite *mens rea* and instructing it that the requisite *mens rea* may be inferred from evidence of reckless disregard is so tenuous as to be more meaningful in the classroom than the courtroom.

The Court properly holds that the appropriate *mens rea* is knowledge. By law a bank officer must know the applicable statutes, rules and regulations controlling the bank's operations. If such an officer (or official covered by the statute) makes a loan with the level of reckless disregard of those rules and the interests of the bank as defined in the instructions in this case, he has acted knowingly in a manner contemplated by Congress to fall within the ambit of knowing and willful misapplication of the bank's funds or credit.

This is not mere recklessness or mere disregard. Tying the two words together, coupled with the strong instructions on the intent required, properly conveyed to the jury the level of knowing and willful conduct required. It seems to us that *Welliver* was correctly decided and that the panel opinion in this matter was equally correct. When we get a case with a charge of "mere recklessness," defined as little more than negligence, then might be the time for the decision in this case. But here, the instruction was at best correct, at worst contained incorrect words that were harmless when read in context, and the jury's verdict of guilty should be affirmed.

We concur in the Court's affirming the 18 U.S.C.A. § 1005 conviction.

### APPENDIX

Portions of district court's charge:

Counts 1, 3, 5, 7, 14, 15, 16, 17 and 18 allege a violation of Title 18 of the United States Code, Section 656 concerning misapplication of bank funds.

\* \* \*

There are three essential elements which must be proved beyond a reasonable doubt to establish the offense proscribed by the law:

> First: That the defendant was an officer or employee of the bank described in the indictment;
>
> Second: That the bank was an insured bank; and

Third: That the defendant, being an officer or employee, knowingly and willfully misapplied funds or credits belonging to the bank or entrusted to its care.

\* \* \*

To "misapply" a bank's money or property means a willful conversion or taking by a bank employee of such money or property to his own use and benefit, or the use and benefit of another, whether or not such money or property has been entrusted to his care, and with intent to defraud the bank.

Now, to act with "intent to defraud" means to act with intent to deceive or cheat, ordinarily for the purpose of causing a financial loss to someone else or bringing about a financial gain to one's self.

To misapply "means more than an irregular or negligent use of a bank's funds (or funds entrusted to the bank)." It means the unlawful taking or conversion of monies, funds, or credits of the bank (or entrusted to the bank) by a bank officer or employee for his own benefit, or for the use and benefit of some other person, done willfully and with the specific intent to injure or defraud the bank.

\* \* \*

With regard to Counts 1, 3, 5, 7, 14, 15, 16, 17, and 18, all charging misapplication of bank funds, I charge you that an intent to injure or defraud is not inconsistent with a desire for the ultimate success and welfare of the bank.

A wrongful misapplication of funds, even if made in the hope or belief that the bank's welfare would ultimately be promoted, is nonetheless a violation of this statute, if the necessary effect is or may be to injure or defraud the bank.

I further charge you that with regard to Counts 1, 3, 5, 7, 14, 15, 16, 17, and 18, all charging misapplication of funds under this statute, the words "intent to injure or defraud" appear as an essential element in each of these counts of the indictment. To act with intent to defraud means to act willfully and with a specific intent to deceive or cheat.

"The requirement that the defendant intended to injure or defraud the bank may be shown by an unlawful act, voluntarily done, the natural tendency of which may have been to injure the bank. It is not necessary, however, that actual injury to the bank be shown.

"A reckless disregard of the interest of the bank is the equivalent of intent to injure or defraud the bank.

"It may be reasonable to infer that a person ordinarily intends the natural and probable consequence of his knowing acts. The jury may but is not required to draw the inference and find that the accused intended all the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any intentional act or conscious omission. Any such inference drawn is entitled to be considered by the jury in determining whether or not the Government has proved beyond a reasonable doubt that the defendant possessed the requisite criminal intent."

I further charge you that a willful misapplication for the benefit of borrower or lender, or both, with intent to injure and defraud the bank is a violation of this particular statute.

\* \* \*

I charge you that if you find that a defendant extended credit to a named borrower who was financially able at the time of the loan to repay the loan, knew that it was obligated to repay the loan, and that no assurances were given to it that the bank not look to it to repay the loan, then in that event, you would be authorized to acquit the defendant of misapplication of bank funds.

I charge you that if you find that the named borrower is both financially capable of repaying the loan and that the named borrower fully understands that it is his responsibility to repay the loan, such a loan cannot—absent other circumstances—properly be characterized as a sham or dummy transaction, even if bank officials knew that the named borrower would pay the

proceeds over to a third party. In this situation, the bank official has simply granted a loan to a financially capable party, which is precisely what a bank official may do.

I charge you that the element of criminal intent necessary for conviction for a willful misapplication of bank funds is not fulfilled by a mere showing of indiscretion or foolhardiness on the part of the bank officer. His conduct must amount to reckless disregard of the bank's interests or outright abstraction of funds. In short, misapplication, not maladministration, is the crime.

\* \* \*

I charge you that a thing is done willfully if it is done voluntarily and purposefully and with a specific intent to fail to do what the law requires, that is to say, with an evil motive or a bad purpose, whether to disobey or disregard the law. The word "willful" is also employed to characterize a thing done without ground for believing it is lawful, or conduct marked by a reckless disregard, whether or not one has the right so to act.

\* \* \*

Bad loans made in good faith do not constitute criminal misapplication of funds or monies. When a loan is made in the honest exercise of an official discretion, in good faith and without fraud, for the actual or supposed advantage of the bank, there is no criminal responsibility on the part of the bank officer, although the transaction may be injudicious and unsafe and even though the transaction results in a loss or damage to the bank. The statute does not punish mere acts of maladministration or negligent or careless use of bank funds.

\* \* \*

The word "knowingly," as that term has been used from time to time in these instructions, means that the act was done voluntarily and intentionally and not because of mistake or accident.

The word "willfully," as that term has been used from time to time in these instructions, means that the act was committed voluntarily and purposely, with the specific intent to do something that the law forbids; that is to say, with bad purpose either to disobey or disregard the law.